## WILL WARD v. THE STATE.

No. 1640.   Decided May 29, 1913.

Rehearing denied June 27, 1913.

**1.—Arson—Evidence—Imputing Crime to Another.**

Upon trial of arson, where the evidence was entirely circumstantial, it was error not to admit testimony that one of the State's witnesses had been threatened by certain parties in the neighborhood and that others than the defendant had a motive to set fire to the house in which the witness lived, and which was set on fire the night one of the houses was burned.

**2.—Same—Rule Stated—Circumstantial Evidence.**

A person accused of crime may show motive, reasons and opportunity on the part of others to commit the crime and, especially so, in cases of circumstantial evidence.   Following Dubose v. State, 10 Texas Crim App., 230, and other cases.

**3.—Same—Imputing Crime to Another—Charge of Court.**

Where, upon trial of arson, there was some evidence introduced that others than defendant had motive, reason and opportunity to commit the crime, the court should have submitted a charge thereon.

**4.—Same—Imputing Crime to Another—Evidence.**

Where, upon trial of arson, the position, opportunities and reasons were as strong on part of others as the defendant to commit the offense, and the State's evidence was entirely circumstantial, the defendant should have been permitted to introduce such testimony.

**5.—Same—Insufficiency of the Evidence.**

See opinion wherein the Presiding Judge holds that the evidence is insufficient to support the conviction.

**6.—Same—Stating Facts in Opinion.**

Where this court did not state the facts correctly with reference to the names of State's witnesses, but such mistake was immaterial and could not change the conclusions of this court reached in the opinion, there was no error.

**7.—Same—Rule Stated—Imputing Crime to Another.**

Where the accused is confronted with facts that are thought to be criminative he has the same right to meet those facts as the State had in the first instance to place them in evidence before the jury, and where defendant sought to show that others had the same opportunity and reasons to commit the crime than he, and the evidence was entirely circumstantial, he should have been permitted to do so.

Appeal from the District Court of Floyd.   Tried below before the Hon. L. S. Kinder.

Appeal from a conviction of arson; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Martin & Zimmerman* and *L. W. Dalton* and *A. L. Love,* for appellant.—On question of imputing crime to another and the insufficiency of the evidence: Wheeler v. State, 56 Texas Crim. Rep., 547, 121 S. W. Rep., 166; Kirby v. State, 49 Texas Crim. Rep., 517, 93 S. W. Rep., 1030, and cases cited in opinion.

*C. E. Lane,* Assistant Attorney-General, and *L. C. Perry* and *Fires & Diggs.* for the State.—On question of imputing crime to another: Kunde v. State, 3 S. W. Rep., 330; McInturf v. State, 20 Texas Crim. App., 335.

DAVIDSON, PRESIDING JUDGE.—On change of venue this case was tried in Floyd County, the offense having been alleged to have been committed in Briscoe County, where the indictment was returned. This is a case of circumstantial evidence.

The substance of the evidence for the State is, that a barn was burned at night near the midnight hour and in the same neighborhood another barn and some hay stacks were burned. Appellant was arrested for this burning. That near the burning were some horse and human foot tracks. These horse tracks were traced from the scene of the burning to appellant's residence. Two human foot tracks were discovered near the burned houses, one track about twelve inches long with some peculiarities about one of the tracks. These peculiarities were evidenced by certain character of tacks in one of the heels of the shoe or boot, and a broken or worn place in the sole of the shoe or boot supposed to have been worn by one of the parties to the burning. Appellant owned and wore a boot that the witnesses said corresponded with the track that was found. Between the point of burning and appellant's residence was evidence where a horse had fallen with the rider, or the rider at least had sat down upon the ground. The impress showed, as the witnesses state, that the party who made the impression on the ground wore corduroy pants. Appellant owned a suit of corduroy and was wearing it the night of the burning, or is supposed to have been wearing it on that occasion. One of the horses whose trail was followed made a track that the witnesses say indicated what they called a "narrow heel." This track was traced to appellant's residence. Another track was traced to appellant's residence and thence north a mile or a mile and a half to Mr. Taylor's residence, where an animal was found supposed to have made this track. This animal showed the next day to have been ridden. The record does not show what became of the third animal. An investigation close and searching was made by people of the neighborhood and the sheriff of the county to locate the animal that made the track termed the horse with the narrow heel but the result was a failure. It is also in evidence that one of the horses was shod in front. The horse that made the track with the narrow heel was shod all around, and the third horse was bare-footed. Appellant's premises, pasture and the countryside were searched, and closely so, to locate the animal that made the track with the narrow heel, but the animal was not found. Appellant owned no such animal, and what became of it is not disclosed, and in fact the testimony shows that they never traced the track further than a certain point near appellant's house; it did not go inside of his premises, and they failed to find where it left the premises. The bare-footed track seems to have disappeared; in fact, the record gives no particular facts or evidence in regard to that after the tracks reached

that neighborhood. The witness Lyles, who was in charge of the premises where the first burning occurred and the alleged owner of the burned premises, was in charge of it for the Swift Company. He was one of the trailing parties and had filed an affidavit charging Olen Ward, brother of defendant, with cattle theft some time prior to this transaction. This engendered ill-will on the part of appellant, and he is shown to have used some pretty vigorous language about it. The State, failing in the case against Olen Ward, dismissed the prosecution. Lyles is shown to have had trouble with other parties called by the witnesses in a general way "wood-choppers." These parties had been cutting wood from the ranch of which Lyles had charge. A man named Ray seems also to have had animosity towards Lyles; he had been charged with a violation of the law by Lyles,—cattle theft. Ray had been living with and working for Taylor, the owner of one of the animals supposed to have been ridden the night of the burning. Taylor testified that Ray was at his house on the day preceding the night of the burning. These wood-choppers and Ray and other parties were shown to have animosity towards Lyles, and lived in the same neighborhood and beyond appellant's residence from where the burning occurred. It may be fairly stated also that corduroy was not an uncommon suit of clothes in that country. Between the point of burning and appellant's residence was found an old wornout overcoat. The State undertook to show that this overcoat belonged to appellant, and one witness testified that he saw appellant on Sunday in possession of a similar coat as appellant was returning home from Clarendon. Clarendon was about forty miles above his residence. It is denied by all the testimony except this witness that appellant had any such overcoat, or that he had an overcoat. These witnesses testify that appellant did not own an overcoat. The State was never able at any point to locate the animal that made the track with the "narrow heel." It was shown positively not to have been at appellant's home, in his pasture or about the place anywhere, and the tracks of the animal did not enter his premises. This is practically the State's case.

Appellant, as before stated, proved by quite a number of witnesses that he did not own an overcoat of any sort and had never owned the coat in question. It is also in evidence, and admittedly so, that appellant left his home and went to Clarendon for the purpose of carrying a lady and her children to take the train to return to the husband and father of the lady and children. He left home Thursday evening, went a few miles to where the lady and her children were visiting. Friday he started to Clarendon, reaching there Saturday. After seeing the lady off on the train he remained in Clarendon Saturday night and returned home Sunday. Two of the State witnesses met him between Clarendon and his home, driving a wagon and a couple of horses. He is traced practically all the way. When within eight or ten miles of his home he stopped in the evening, fed his horses, and about dusk hitched up his team and took his brother-in-law and his sister, his brother-in-law's

wife, and their children home with him that night, reaching there something like 9 o'clock that night. This seems to be an uncontroverted fact except as to the time, which was somewhat guess work, but he drove this eight or ten miles after dusk, and his team was tired and the road rough, and they estimate it was about two or two and a half hours after leaving his brother-in-law's before reaching home. The State witness Taylor, owner of one of the horses supposed to have been ridden that night, shows that appellant's wagon passed his house something like half after 8 or 9 o'clock. This was about a mile and a half or such matter from appellant's residence. The brother-in-law and sister of appellant, and his wife and himself all testify that upon reaching home it was something like 9 o'clock. That his wife, who had retired, got up and cooked supper, and after sitting around a while, about 11 o'clock they retired for the night, all of them sleeping in the same room in different beds. The distance from appellant's house to the point of burning was eight or ten miles. The burning is supposed to have occurred about 11 o'clock that night.

1. A bill of exceptions reserved by appellant recites that while Warren Bell was testifying for the State, on cross-examination, defendant offered to prove by the witness and propounded questions to elicit testimony as follows: That just prior to the 6th day of February, 1910, the date of the fire, that defendant is alleged to have started, that he, the witness, who was working for Swift & Co. on what is known as Shoe Bar ranch, as such employe, had a good deal of trouble on said ranch with wood haulers, several of them would go on said ranch and take therefrom, without consent, wood; and that said witness had told said wood haulers to get off the ranch, and made them get off; and further, that a short time prior to said fire, in the direction in which the horse tracks led in going from the fire, there had been a fire on the ranch which burned the grass, and also that he, the said witness, had received threats that the company for whom he worked would be burned out from the wood haulers. That said witness would have testified to said facts as set out. That the defendant offered said testimony for the purpose of showing that others in that neighborhood had ill-will against the witness and said company, and that others than the defendant had a motive to set fire to the house in which the witness lived and which was set on fire the night that Alek Lyles' house was burned. The testimony showed that on the night of February 6, 1910, a house belonging to Swift & Co., and in which the witness lived, and was sleeping, was set on fire and burned, being the same night that Alek Lyles' house was burned, and that horse tracks led from Swift & Co.'s house to Alek Lyles' house and vice versa; and that horse tracks led from Alek Lyles' house to or near defendant's house.

The State objected to the admission of this evidence because same was immaterial and irrelevant to any issue in the case, and threw no light on the matter under investigation, and could not be available to the defendant in his defense, there being no other testimony offered attempt-

ing to connect any wood haulers with this burning of Lyles' house. These are the objections urged by the State and sustained by the court. Of course, the grounds of objection are not treated as matters of fact for either side. The purposes for which this testimony was offered under the circumstances of this case were valid. This evidence was clearly admissible in view of what has been stated before. It is a rule too well established now to be gainsaid or questioned that a person accused of crime may show motive, reasons and opportunity on the part of others to commit the crime other than the accused. This rule would seem to obtain with considerable more force in cases of circumstantial evidence, and the rule, or reasons for the rule, would seem to be intensified where the facts and circumstances are of a weak and inconclusive nature. This question was thoroughly adjudicated in the case of Dubose v. State, 10 Texas Crim. App., 230; Gilder v. State, 61 Texas Crim. Rep., 16, 133 S. W. Rep., 883; Ex parte Gilstrap, 14 Texas Crim. App., 240; Chancey v. State, 50 Texas Crim. Rep., 85, 96 S. W. Rep., 12; 12 Cyc., 734; Bram v. United States, 18 S. C. R., 183, 168 U. S., 532; 42 L. Ed., 568; Brown v. State, 25 So., 182; Blocker v. State, 55 Texas Crim. Rep., 30; Hart v. State, 15 Texas Crim. App., 202; Wheeler v. State, 56 Texas Crim. Rep., 547; Kirby v. State, 49 Texas Crim. Rep., 517; Harrison v. State, 47 Texas Crim. Rep., 393. The evidence should have been admitted.

In this connection there was some evidence introduced to show these matters. The court erred in not submitting the issue to the jury that if somebody else than the defendant did the act of burning and appellant was in no way criminally responsible he should be acquitted. We think this charge should have been given.

The ill-will and motive on the part of others can be shown and the threats of parties other than the defendant and their ill-will and threats to do the injured party harm in any way is admissible, and this, of course, must be in connection with the idea that the parties are or may have been in such position to the alleged offense as they could have been or might have been the guilty parties. The position and opportunities and reasons are as strong on part of others as the defendant.

2. It is contended that the evidence is not sufficient to justify the verdict against appellant. The writer does not hesitate to say he believes this contention is sound under the statement of facts. The State's evidence, it occurs to the writer, shows that appellant could not and did not burn the house. If the State's testimony is to be relied upon, it would show that appellant was at home at such time that it would have been practically impossible for him to have burned the house, and not only so but there is no evidence in this record to show that he could have been acting in concert with parties other than his brother-in-law who spent the night with him. The State did not undertake to connect with defendant a third party. Nor was it undertaken to connect anybody, so far as appellant was concerned, with the riding of the bare-footed horse, or that he got the horse belonging to Mr. Taylor that was

shod in front. The horse with the narrow heel was not traced to appellant's possession. There was no attempt to show that Ray, who had been living with Taylor and who had not been at Mr. Taylor's since, was connected with appellant on that night. In fact, there is nothing to indicate that he was at appellant's or in that neighborhood that night other than the fact that he had been at Mr. Taylor's preceding the burning at night. Mr. Taylor testifies he does not know who rode his animal. The State's evidence excludes the idea that the horse that made the narrow-heeled track was at appellant's, and does not show what became of the horse, or who rode the horse. The State's evidence also excludes the idea that any of appellant's horses were ridden on the night of the burning. This would also intensify the reason for introducing evidence to the effect that the other parties may have committed the act of burning. Without committing my brethren to the proposition that the evidence is insufficient, the writer unhesitatingly states he does not believe the State has a case against appellant.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE, not sitting.

### ON REHEARING.

### June 27, 1913.

DAVIDSON, PRESIDING JUDGE.—Some time since an opinion was handed down herein reversing the judgment. In making a statement of the facts in conclusion to the effect that in the mind of the writer the evidence was not sufficient to support the judgment, that statement expressly excludes the idea that my brethren expressed any opinion in regard to it, and that my views were not to be held in any way binding upon them.

It is contended, however, that in one portion of the opinion it was erroneously stated that Lyles had charge of or was connected with the Swift & Co. ranch. Before going further I wish to state that closer inspection of the record will disclose that it was erroneous to state that Lyles was in the employ of Swift & Co. The record discloses that the witness Bell was in the employment of Swift & Co. In dictating it is possible the names may have been miscalled by the writer. However, in the mind of the writer that is too trivial for any serious discussion in view of the record. Some of the testimony does show that Lyles owned land near the Swift & Co. ranch, amounting to about two sections, and one of his houses was burned the same night that the house was burned where Bell was employed. The evidence in the case dealt rather indiscriminately with both burnings. The theory of the State was, and the facts showed fairly well that the same parties burned both premises. It would, therefore, necessarily follow in this connection that the accused was entitled to meet any and all facts relied on by the State to connect him with either or both burnings. The State pursued the investigation

as to both burnings assiduously, and all for the purpose of showing that the same parties burned both houses, and further, by such circumstances as it could gather that appellant was one of the three parties who did the burning. It is a fundamental proposition that where an accused is confronted with facts that are thought to be criminative, he has the same right to meet those facts as the State had to place them in evidence before the jury. This proposition is so clearly right and fundamentally correct it would need no argument to sustain it. This was sought to be done through the witnesses Bell and Lyles as shown by bills of exception, but the court refused to permit this evidence to go to the jury. It is urged by the State in the motion that because this evidence was not in the record that, therefore, there was no error. The reason the evidence was not in the record, as well as such evidence as might have followed the introduction of this connecting the parties, was on the objection of the State, it was excluded. We sufficiently treated Bell's evidence in the original opinion and do not care to rehash it. By Lyles appellant offered to show that he had had trouble with Yates prior to the burning and paid a fine for whipping or slapping him. This was ruled out. Lyles' house was burned. I do not care to follow this matter further. This evidence was clearly admissible, and should have gone to the jury. In this case the reasons were as strong as possible perhaps to be brought out for the reason the State relied exclusively upon circumstantial evidence. No one testified as to who the parties were that did the burning, for no one saw them. The State proved there were three parties present. One of the horses ridden is shown to have belonged to Byron Taylor, where one of the Ray boys had been living, and which was a mile and a half north of and farther away from where the fire occurred than where defendant lived. This horse was traced from the fire beyond appellant's house to Taylor's house. One of the Ray boys had been working at Taylor's. The facts in the case, as stated in the original opinion, shows that one of the parties rode what they called the "horse with the narrow heel." This animal was not found at defendant's, although the closest investigation was made, and in fact the horse was not located anywhere or by anybody. Some of these parties whom the defendant contends had animosity toward Lyles and Bell, either or both, lived beyond appellant's residence and in the way the horses should have gone. The searching parties investigated enough to find where the Taylor horse went, but ceased to investigate as to the horse with the narrow heel. Why this cessation was made is not explained in this record. The State's motion seems to indicate that inasmuch as the prosecution had adduced evidence tending to connect the defendant with the offense, that, therefore, he was not authorized to show facts or circumstances of the same character before the jury to the effect that he did not participate in the burning, and that some other parties may or might have done it. This is not right. Such contention ought not to be made, at least it is not the law in Texas. The authorities are cited in the original opinion, and it is unnecessary to go further into that question.

Another contention is made by the State, that is, that the writer of this opinion was wrong in stating in his judgment the evidence was not sufficient to support the conviction. I have read what the State has to say in regard to the matter, and am the more firmly convinced that I was right in the original opinion in this respect. Then and now I am not undertaking to bind my brethren in regard to this matter. I have gone over the State's motion and copy in part from it as follows: "The record in this cause does not show wherein any other person than the defendant had any cause or grievance against the witness Lyles, whose property is alleged to have been destroyed by the defendant, nor is there any testimony in the record to show that even should there have been any other who had a grievance against the said witness there is no testimony that any other person than the defendant had an opportunity, or was in that neighborhood, or that wore the same kind of shoes, nor was there any to show that any other person in that community that wore an overcoat of the description that was found there, nor is there any testimony, directly, that any other person in that community had on corduroy pants on that day, nor is there any testimony that the tracks of the horses as found on the premises of Alek Lyles led to any other place than the premises of the defendant. On the contrary, the evidence all shows that the defendant did have a motive, directed against Alek Lyles; that the defendant lived six or seven miles from the said Alek Lyles, and not nine or ten, as expressed by the court in its opinion; that the defendant did have the opportunity; that he did have horses; that he was wearing corduroy pants at the time he was arrested and on the day of the fire," etc.

Warren Bell testified: "I have seen other people down there with corduroy pants on except Will Ward. They are common in that country, and a good many people wear them." The same witness further said that, "I do not think the way we all went from Lyles' house to Will Ward's could have been over nine miles." Again he says: "We might have been longer than two hours and a half making that nine miles." Bell and others were following the tracks of the supposed guilty parties. Frank Pate testified for the State as follows: "I have been working for Swift & Co. four years the 11th of last April, and am working for them now. Alek Lyles is in possession of some land down there, but I don't know how much, a couple of sections, I judge." This quotation is made to show how the name of Lyles may have been used instead of Bell. While Lyles did not have charge of the Swift & Co. Shoe Bar ranch, as the witnesses term it, he had two sections with them and the ranch seems to have been practically all around it, and the evidence with reference to the wood choppers having ill-feeling toward people on Shoe Bar ranch might have some effect as the fires occurred at the same time and by the same parties. It was admissible to show motive on the part of others to burn both premises. Whoever burned one place burned the other, and any fact that would go to connect these wood choppers and others than the defendant with either one would

necessarily connect them with the other. Nor could this affect the right of appellant to have the jury instructed as to the fact that others had motives, for by the testimony it appears that Sol Ray, Ed Ray and John Ray had the same motive against Lyles and the Shoe Bar ranch people on account of Sol Ray having been accused of cattle theft, as was Olen Ward, brother of appellant, and it seems to be undisputed that these people were in the neighborhood, and that the tracks followed by the officers led in the direction of where they lived or their places of residence. One of the principal facts relied upon by the State to connect appellant with it was because some of the parties had charged Olen Ward with cattle theft. I do not care to review the matter any further. After looking over the facts again, I am fully persuaded I was correct in my views as to the sufficiency of the evidence.

The motion for rehearing is overruled.

*Overruled.*