ZEB DICKENS v. THE STATE.

No. 15251.   Delivered June 15, 1932.
Rehearing Denied October 12, 1932.
Reported in 53 S. W. (2d) 41.

The opinion states the case.

*Bob Calvert,* of Hillsboro, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, murder; the punishment, two years in the penitentiary.

The state's evidence in brief showed that on the day of the killing, the

appellant went to one T. L. Patterson and asked him if he could bale his hay for him and asked Patterson if he would get a gun that he had pawned at the hardware store and to keep it for him until he baled the hay. After they got the gun, the appellant wanted to secure said Patterson with a watch instead of the gun, which Patterson agreed to do, and took the watch and held it for the debt and turned the pistol over to the appellant. When Patterson turned the gun over to appellant, he said to appellant, "You are not going to get into trouble," and appellant replied, "No, sir, I just want to have protection around the house." Later on the same day, the appellant's wife was buying some goods in an A. & P. store in the city of Hillsboro, and the deceased entered the store and a few minutes thereafter the appellant also entered the store. Something was said between appellant and deceased, and the deceased ran to the back of the store, the appellant following him with a pistol in his hand. The witness Russell Fowler ran after the parties, who had gone back of a partition between the front and rear of the store, and, when he arrived in the rear part of the store, he saw the appellant standing there with a gun in his hand, and he told the appellant to give him the gun and appellant said, "Just a minute," and made a motion of handing the witness the gun, and the deceased opened the toilet door, and appellant shot at him. Deceased then pulled the door to, and the appellant went directly in front of the toilet door and tried to open it, but, not succeeding in doing so, he started shooting through the door. Two bullet holes were found in the door and at another place it looked like a bullet had hit the door and glanced off. The body of the deceased was found lying on the floor in front of the toilet. A physician testified that there were five holes in the body of the deceased made by three bullets, and also that the deceased died as a result of said wounds. When the appellant was arrested, the automatic pistol with which he shot the deceased was empty. No weapon of any kind or description was found upon the body of the deceased.

The appellant claimed that the deceased had been going with his wife and had threatened him, and he shot him because of the fact that when he ran off he thought he was going to get a weapon and return.

By bill of exception No. 1, appellant complains that after the witness Charley Ward had testified that the general reputation of the appellant as being a peaceable law-abiding citizen in the community where he lived was good, that the district attorney upon cross-examination asked said witness if he was not one of appellant's bondsmen, to which question appellant's counsel objected, and the objection was sustained by the court. The bill further shows that upon further examination of said witness, the district attorney propounded the following question to him, "You recall that, don't you, and that he afterwards made bond and the bond was forfeited?" Upon the objection of the appellant to said question, the objection was sustained by the court and the jury was instructed not to

consider the question asked by the district attorney. It appears from said bill of exception that the court sustained appellant's objection to the questions asked the witness, and that neither of said questions were answered, and the court also admonished the district attorney not to ask such questions again, and the matter was not pursued further. The court also instructed the jury to disregard said question. No reversible error is shown by said bill of exception.

"As tending to show flight the state may show that the defendant forfeited his bail bond or recognizance." Branch's Ann. P. C., sec. 135; Hart v. State, 22 Texas App., 567, 3 S. W., 741; Gent v. State, 57 Texas Crim. Rep., 414, 123 S. W., 594; Arnold v. State, 74 Texas Crim. Rep., 269, 168 S. W., 122, 124.

Bills of exception Nos. 2, 3, 4, 5, 6, and 7 complain of the action of the court in permitting the district attorney, on cross-examination of the witnesses, who had testified to appellant's good reputation as being a peaceable and law-abiding citizen, as to whether or not they had not heard that the appellant had been drunk after he had been released on bond in this case and had been arrested on a charge of drunkenness. All of said bills of exception are qualified by the trial judge to the effect that the defendant had filed an application for a suspended sentence in the event of a conviction and had placed his general reputation in issue on the trial of said cause. Also testimony to the same effect was admitted without objection from defendant's counsel. As shown on page 62 of the statement of facts, the witness Dow Frazier testified that he was one of the bondsmen on the bond of the appellant; that the appellant was again rearrested on a charge of being drunk, and he was told that they caught him over at the Holy Roller church hugging a negro man. This testimony went before the jury without objection, and thus the very testimony against which objection was urged, as shown by these bills of exception, appears in other parts of the statement of facts from other witnesses without objection having been interposed by appellant. The erroneous admission of the testimony would not call for reversal, if the same fact is proven by other testimony not objected to. Pryor v. State, 88 Texas Crim. Rep., 211, 225 S. W., 374; Burgess v. State, 88 Texas Crim. Rep., 146, 225 S. W., 182; Enix v. State, 112 Texas Crim. Rep., 376, 16 S. W. (2d) 818. It follows that, if the court erred in admitting the testimony, the error does not call for a reversal of this case.

Bills of exception 8, 9, and 10 complain of permitting the state on cross-examination of appellant while on the witness stand to ask the appellant if he had not been going with one Leola Richardson and if he had not asked said Leola Richardson to marry him if he got out of his trouble. Bill of exception No. 11 complains of the action of the district attorney in asking the appellant on cross-examination if he had not kept company after he had separated from his wife with one Jeanette Pendleton.

Bill of exception No. 12 complains of the same questions propounded to the witness in regard to a woman by the name of Tommy Smith. Bills 13, 14, 15 complain of permitting the state to prove in rebuttal by the witness Leola Richardson that the appellant had been coming to see her and was coming to see her before he was divorced from his wife and had asked her to marry him on several occasions. All of said bills had the following qualifications by the trial judge: That the defendant was attempting to justify his action in killing the deceased on the ground that he was defending his wife.

The appellant testified in his own behalf that he and his wife had separated several times and had been separated for some time. He further testified that he had instituted an action for divorce against his wife and had gotten her to waive service of citation in said cause; that he knew that his wife had been associated with the defendant since she and he had been separated; that she had been gone for about four or five months; that he still loved her and did not like for her to go out and stay with the deceased; that, on Wednesday before the killing on Friday, he had gone and spoken to the deceased about his association with his wife, and the deceased told him, "By God, don't you ever ask me anything about your wife and you had better never meet me when you see me with her, if you do there will be hell to pay"; that on the day of the homicide he got a pistol from Mr. Patterson, not because of the fact that he wanted to kill the deceased, but because he knew the general reputation of the deceased to be a dangerous and violent character, and he was scared of him unless he had some kind of protection; that when he walked into the A. & P. store the day of the killing, the deceased and appellant's wife were standing in there talking, and he started to call the deceased, and deceased ran towards the rear of the store; that he ran after the deceased and slipped and fell; that he was trying to get the gun out of a paper sack he had it in when he fell; that Mr. Fowler came up and said, "Zeb, what do you mean, give me that gun?" and he told him, "Yes sir, in a minute"; that he started to give the gun to him, but as he looked up the deceased had opened the closet door and seemed to him like he started out, and that scared him and he shot; that, after he had shot the first time, he walked down towards the closet door and deceased started out again and he fired another time; that after he had emptied his gun he started towards the courthouse to give himself up.

It will therefore be seen from appellant's own testimony that, at the time of the killing of the deceased by appellant, the deceased by no act done or words spoken manifested any intention to execute any threat or threats that deceased had made regarding appellant, and the appellant was attempting to justify the killing of deceased alone, upon the ground that he was defending his wife from the attentions of the deceased, and, having made that an issue in the case, the state had a right to show its

falsity or break its force and effect in any legitimate way. "Whatever material facts are introduced that tend to affect the issue, the other side has the right to deny, contradict, or explain that testimony, showing its falsity, or breaking its force and effect in any legitimate way." Branch's Ann. P. C., sec. 97; Johnson v. State, 74 Texas Crim. Rep., 179, 167 S. W., 733; Arnold v. State, 9 Texas App., 435; Ward v. State, 71 Texas Crim. Rep., 310, 158 S. W., 1126. The opinion is expressed that the testimony complained of was admissible for that purpose.

Appellant requested several special instructions which were refused by the court. We believe that the charges requested were fully covered by the court's general charge.

No reversible error appearing in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We have carefully examined appellant's motion for rehearing. After appellant had testified giving his version of the killing, as set out in our original opinion, it seems obvious that the state might prove that following appellant's separation from his wife some time prior to the killing, he had been keeping company with various other women, to some of whom he had made proposals of marriage, etc., the legitimate purpose of same being to show his state of mind toward his wife, and to rebut the likelihood that he would so keenly resent and be affected by the attentions of deceased to his said wife. There is no suggestion that the women with whom appellant went, or to whom he proposed marriage, were lewd women or women of bad reputation. We do not think the question of appellant's motive in doing the shooting to be of such collateral character as that he might not be cross-examined regarding same, or that the state might not show by testimony that his motive was not what he claimed it to be.

Believing the case properly disposed of, the motion for rehearing will be overruled.

*Overruled.*