### ALBERT CHAPMAN V. THE STATE.

· No. 3728.  Decided October 20, 1915.

#### 1.—Bigamy—Continuance—Motion for New Trial—Diligence.

If it be conceded that the first application for a continuance was not in strict compliance with the law, yet it was shown on motion for new trial, to which was attached the affidavit of the absent witness that the testimony was material. a new trial should have been granted under the facts of the instant case.

#### 2.—Same—Cumulative Evidence—Second Application.

. It is only on second and subsequent applications for continuance that the rule of cumulative evidence finds a place in our criminal practice and procedure, and where defendant is relying upon himself or his immediate relatives, the rule with reference to cumulative testimony is not regarded with that strictness that it would be if the witnesses who testify are in no wise related to him. Prendergast, Presiding Judge, expressing no opinion.

#### 3.—Same—Insufficiency of the Evidence—Marriage—Divorce.

If defendant believed at the time when he married a second time, tnat he was divorced from his first wife, he had a right to marry, if he was laboring under a mistake of fact. Prendergast, Presiding Judge, expressing no opinion.

Appeal from the District Court of Lamar. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of bigamy; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Chas. Roach,* and *Lattimore & Hutchison,* and *Ramsey, Black & Ramsey,* for appellant.—On question of continuance: Roquemore v. State, 54 Texas Crim. Rep., 595; Smith v. State, 54 id., 617; Pierson v. State, 56 id., 609; Sharp v. State, 61 id., 343.

On question of motion for new trial: Baines v. State, 42 Texas Crim. Rep., 510; LeRoy v. State, 43 id., 566; Long v. State, 48 id., 435;

Morgan v. State, 54 id., 549; Thomas v. State, 51 id., 330; Long v. State, 39 id., 462; Freeman v. State, 75 S. W. Rep., 505; Snead v. State, 100 S. W. Rep., 922; Smith v. State, 142 S. W. Rep., 1173; Creacy v. State, 166. S. W. Rep., 162.

On question of materiality of absent testimony: McAdams v. State, 24 Texas Crim. App., 86; McCline v. State, 25 id., 247; Hammond v. State, 28 id., 205; Tyler v. State, 13 id., 205; Yantis v. State, 49 Texas Crim. Rep., 404; Day v. State, 62 id., 448.

On question of cumulative testimony: Morgan v. State, 54 Texas Crim. Rep., 549; Gaithright v. State, 85 S. W. Rep., 1076; Phipps v. State, 31 S. W. Rep., 397.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of cumulative evidence: Fisher v. State, 4 Texas Crim. App., 181; Fulkerson v. State, 57 Texas Crim. Rep., 80; Branch's Crim. Law, sec. 257.

On question of diligence: Kirkpatrick v. State, 57 Texas Crim. Rep., 17; Branch's Crim. Law, sec. 257.

DAVIDSON, JUDGE.—Appellant was convicted of bigamy, his punishment being assessed at three years confinement in the penitentiary.

One of the serious questions, and perhaps the most serious question in the case, was the action of the court with reference to the application for a continuance as originally presented, and a subsequent action in overruling the motion for new trial in connection with this application for continuance. The evidence shows that the defendant married Laura Purvis in 1903, and they had some children, and that they separated and were not living together for three years or more, and in 1911, in July, he married Miss Grayson in Lamar County, the previous marriage to Miss Purvis having occurred in Erath County. His application was based upon the absence of Roy Johnson and his former wife, Laura Chapman. The court evidently overruled the application on account of want of what he deemed sufficient diligence. The case went to trial. On the trial of the case it was testified that his former wife had written appellant's mother to the effect that she had a divorce. It also developed that Roy Johnson had informed defendant that his wife had been divorced. He also himself introduced a letter, having taken the stand in his own behalf, from his first wife, Laura, informing him of the fact that she had obtained a divorce from him and the custody of the children. This letter was introduced and went before the jury as evidence. This letter was attacked, and it was sought to show it was a forgery, and there was testimony introduced to that effect by some of his relatives, especially a brother-in-law. The letter received by appellant was dated June 25. 1911, and is in the following language:

"Purvis, Texas, June 25, 1911.

A. A. Chapman: I will write a few lines to let you know that the children are well and doing well and I want to say that I have got my

divorce from you and you are no longer mine, so I will close. You write the children. Goodbye, Laura Chapman."

The affidavit filed by Laura Chapman is as follows:

"State of New Mexico,
County of Roosevelt.

Personally appeared before me the undersigned authority, Laura Chapman, and being sworn deposes and says that 'I was the wife of A. A. Chapman, and I wrote him a letter under date of June 25, 1911, while I was at Purvis, Texas, and addressed same to him at Eastline, Texas, and in this letter I told him the following.'" Then follows the letter above copied. This is sworn to by Laura Chapman on the 27th day of April, 1915, before C. M. Compton, Jr., notary public in and for Roosevelt County, State of New Mexico. The following letter is also attached to the motion for new trial:

"Mr. Chas. Roach, Paris, Texas.

Kind Sir: I will write you a few lines in regard to Alfred's case. I had a letter from Mr. Lipscomb this morning and will send all to you now. There isn't but one thing I want to ask, did Alfred really marry another woman in Ft. Worth, or is it false. I think I should know the truth, and if I could see Alfred he would not hesitate to tell me. I have two lawyers here, two brothers that will do all in their power free gratis so any time I or the Mr. Comptons can do anything, don't hesitate to call on us and any time I am needed on the stand and can possibly get there I will be there in person. I could do more there than I can here, and have wrote for more evidence in Stephenville, Texas, I guess I will get their evidence soon. Mr. Jim Sagesor and R. P. Ogen, a Baptist minister. I want to impeach my brothers and brother-in-law both, if possible. I was a slave for all the relation before I was married and they wanted me to continue same and Alfred objected, so they hate him and it would be to the height of their ambition to pen him. They have even made those threats. They did not want me to marry Alfred, they said he was only a kid and would not know how to take care of me. My father did not say one word and was satisfied with my marriage; my brothers first raised a kick and then Palmer and then my mother thinks what the sons failed to know are marked out. Her and the six boys wore the pants, and dad is left out. Oh that isn't half I can tell things that would make a jury flinch. He was not treated even as good as a good dog, much less a human. They disgusted him against me, I could see the change coming on every day I was with him, that is why I don't blame him. I love Alfred just as well today as I did the day I was married to him. Tell him I say hello, to be good. He is in my mind always. From
Laura Chapman."

The brother-in-law she mentioned testified that the letter was a for-

gery. Turney was related by marriage, Laura Chapman being his niece. Appellant's brother-in-law was named Purvis, and he was a brother-in-law of Laura Chapman, whose maiden name was Laura Purvis, and he testified that the letter introduced in evidence was not in her handwriting.

If it be conceded that the diligence was not sufficient or in strict compliance with the law, it may be replied this is the first application for a continuance, and that his former wife, Laura, was living in New Mexico at the time, and that process was issued for her it seems and returned not found; at least she was not obtained at the trial. After the conviction communication was secured and she made the affidavit that the letter introduced in evidence was genuine, and that she wrote it. In connection with that this letter that she writes to appellant's attorney, Mr. Roach, was introduced showing that she communicated with the district attorney, Mr. Lipscomb, with reference to these matters. Several jurors filed affidavits that if they had believed the letter introduced in evidence was genuine they would have acquitted the appellant without hesitancy, but in view of the fact that some of the evidence showing it was not in her handwriting and a forgery, decided the case against appellant. These affidavits of jurors can not impeach their verdict, and are mentioned in a general statement of the motion for new trial. Believing that his wife was at Portales, New Mexico, appellant prepared interrogatories to send out to take her depositions. These were filed but not in time to secure her testimony. Process was issued for Roy Johnson as well and he was not obtained. As before stated, diligence is not always the controlling criterion of first application for continuance. A fair trial of the innocence or guilt of the party is guaranteed and ought to be guaranteed by the laws of Texas, and even if diligence is not sufficient, if upon motion for new trial it is shown that the absent evidence is true and material, a new trial should be awarded. The affidavit of his wife shows that the letter was not a forgery, that she in fact did write the letter. It may be stated in this connection that the divorce had not been granted at the time she wrote. Subsequently she did obtain a divorce, but it had not been obtained at the time she wrote the letter to her husband. The rule of cumulative evidence, which seems to have entered somewhat into the trial of the case below, from the viewpoint of this record, does not obtain in applications for first continuance. It is only on second and subsequent applications that the rule of cumulative evidence finds a place in our criminal practice and procedure. There is another rule that this court has followed, that is where the defendant is relying upon himself or his immediate relatives, that the rule with reference to cumulative testimony is not regarded with that strictness that it would be if the witnesses who testified are in nowise related to him. This is based upon the theory that his mother, who testified for him in this case, had received a letter also from her daughter-in-law to the effect that she was divorced, and that defendant himself would be much more interested in the result of the trial than others, and perhaps to the

extent that their testimony should be more closely scrutinized. The inducement under such circumstances would be stronger to prevaricate than to state the truth. In view of the affidavit and statements in the letter to Mr. Roach by Laura Chapman of the genuineness of the letter, and that it was not a forgery, and in view of the whole record and the situation of this case as presented both before the jury and in the record before this court, entitles this appellant to another trial. If Laura Chapman should take the stand and testify as she has sworn she would, that she wrote that letter, and it was not a forgery; if the jurors who filed affidavits in the case are worthy of credit, and there is nothing to indicate that they are not first-class citizens, appellant would be acquitted. If he believed at the time that he married the second time that he was divorced from his first wife, he had a right to marry. If the divorce had actually occurred prior to the time of his marriage, of course there would be no objection to his second marriage. If he believed it and was laboring under such mistake of fact as to induce him to believe he was a divorced man, he still would not be guilty, and the verdict of the jury should have been in his favor. Laura Chapman's testimony, if in accordance with her affidavit, ought to settle that question, and it seems the jury settled it against defendant because of the fact that her brother-in-law had sworn that the letter was not in the handwriting of his sister. We believe this record presents itself in such shape appellant has not had a fair trial that he ought to have had, and under this showing he is entitled to another hearing, and it ought to be and is awarded him.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE.—I agree to a reversal because I think under the circumstances a new trial should have been granted, but I do not agree to all that is said in the opinion.