DICK GILLIAM V. THE STATE.

No. 12395. Delivered May 15, 1929.
Rehearing overruled June 26, 1929.

The opinion states the case.

*J. H. Beavers* and *C. E. Florence* of Wennsboro for appellant,

*Walter G. Russell* of Tyler, *W. N. Jones* of Mineola, and *A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, murder; penalty, twenty-five years in the penitentiary.

Former appeals of this case will be found reported in 100 Tex. Crim. Rep. 67, and 107 Tex. Crim. Rep. 319.

The only question which is seriously argued and the only one which we deem necessary to discuss is the alleged insufficiency of the evidence to support the verdict of the jury. Appellant and deceased were close neighbors, appellant being a tenant on a farm which appeared to be under the management of deceased as agent for the owner, who lived in another county. They both worked land in the same field. Many petty differences between them, out of which serious trouble so frequently grows, are shown in the record. Appel-

lant is shown to have shot a dog belonging to deceased that had bitten one of the small children of appellant. Deceased ran over with his wagon and injured some rows of cotton belonging to appellant and the difference between them growing out of this transaction was submitted to arbitration, which resulted in appellant being paid eighty cents by deceased. Deceased broke a singletree for appellant. He agreed, according to some of the testimony to clean out appellant's well, which he had failed to do, and appellant was threatening to charge him for "toting" water. One of the witnesses for the State testified that appellant a short time prior to the killing approached him to borrow a pistol and according to the witness he talked at the time like he was expecting trouble with deceased and said at the time that he could not afford to fight a man fair like the deceased. He afterwards. bought a pistol and practiced with it, shooting at a knot on a box. He took it to a blacksmith shop and had it repaired. Appellant had gotten out three bales of cotton and claims to have sold same and deposited the rent to the credit of Mr. Horn, the owner of the land. The deceased seems to have insisted that he pay the money to him as agent for Mr. Horn. On the day of the fatal difficulty appellant had his fourth bale of cotton loaded preparatory to taking it to the gin. Deceased and some of his children were picking cotton on the premises occupied by appellant and deceased went to the lot where appellant's loaded wagon was located for a pair of cotton scales. There he was afterwards found dead, with a bullet hole through his body. Appellant claims that deceased forbade him to haul the cotton off and was attacking him with a pair of cotton scales when he shot him in self-defense. Appellant also testified, as well as some of his witnesses, to threats made by deceased against him. Testimony was introduced for both the State and the appellant that each of the parties to the trouble had sent word to the other that he did not want any trouble. It is earnestly argued on this appeal that appellant's testimony. showing that he fired the shot in self-defense is not contradicted and is in fact corroborated by the physical facts and that therefore the verdict of the jury was unauthorized. There was no eye witness to the killing. The appellant alone testified to the immediate facts thereof. We regard the facts reflected in the record as raising an issue as to whether appellant's version of the affair is true. Particularly is this reflected in the apparent contradiction between the physical facts and appellant's version of the position deceased was in at the time he was shot. The statement of facts is in a rather confused condition with reference to this, but

we note that appellant while on the stand was made to illustrate many times the position of deceased's arms and body at the time of the shooting. From the answers we infer that the State showed by these illustrations that deceased was coming straight towards appellant with the scales and his arms uplifted towards the right, as a right-handed man would strike. It was shown in contradiction to this that the bullet's entrance and course through the body was such as to show the impossibility of appellant's version being true. It was also shown that the deceased was left handed. This was sufficient to make an issue, but regardless of this the jury under the facts exhibited in this record had a right to reject entirely the testimany of appellant. It alone is the judge of the credibility of the witnesses and the weight to be given their testimony with which we cannot interfere. We take the following quotation from Hawkins v. State, 99 Tex. Crim. Rep. 571:

"From the fact that a witness is unimpeached and uncontradicted, it does not follow that the jury are necessarily bound to believe his evidence and take it as true. There is no such positive rule; no more than that they must reject his testimony, if evidence has been offered to impeach him. The question of credibility, under all the testimony and surrounding indications, judging from mode and manner of testifying, the probability or improbability of the statements, is for the jury; though they are not to reject or disregard a witness arbitrarily, and especially so in those cases where his testimony is sustained by the corroborative evidence of circumstances and of other witnesses. And, 'while they may judge of the credibility of a witness, they must exercise judgment, and not will merely, in doing so.' "

"However, while the jury are not warranted in arbitrarily or capriciously rejecting the testimony of a witness, neither are they required to accept and give effect to testimony which they find to be unreliable, although it may be uncontradicted."

This case sufficiently illustrates the rule which we regard as binding on this Court and under which we are not at liberty to set aside the verdict of guilty in this case.

Believing the evidence sufficient, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Complaint is made that in our original opinion we said that deceased went to the lot (at whose gate the killing occurred) *for* a pair of cotton scales. We should probably have said that he went there *with* a pair of scales. The usual way taken by deceased and his children going from their home to their field, was through the gate to the lot where the shooting took place. Deceased started with his children to said field to pick cotton on the morning of the homicide, but turned back with his little daughter, got a steelyard having two peas, one large and one small, with which the two went together to said gate. The child testified that she went on to the field carrying the large pea, leaving her father in conversation with appellant at said gate. We make this correction, but as far as we can see it adds nothing to any offensive issue in the case, there being no question but that deceased had the steelyard when he went to said lot. We are unable to assent to appellant's contention that the jury must accept his version of the facts surrounding the killing, he being the only eye-witness to the shooting. Deceased was shot in the left side, the bullet entering two inches back from the left nipple and about one inch lower and coming out, as testified by the doctor, "back part of the shoulder under the right shoulder blade." The testimony shows that deceased crumpled down and died at once after being shot. The doctor said the wound in the skin at the place of entrance was directly over a rib which was not injured; that evidently when the bullet entered the skin was drawn up. Many efforts were made, as appears from the testimony of the doctor, to get him to say that this or that position of the arm or body of deceased at the time of the shooting, would or could have caused the lack of exact correspondence between the wound in the skin and that in the flesh under the skin, and appellant here insists that the fact that the wound in the skin is perhaps a half inch over or under that in the flesh, so strongly corroborates his claim that deceased had his arm uplifted with the steelyard in a striking position when appellant shot,—as he claimed in self-defense,—that we ought not to let the verdict stand. These questions were for the jury who heard the witness and observed all the illustrative positions as to the arms, body, etc., which were drawn out and put before them in the opposing efforts to make of this a weighty fact one way or the other. In one instance the witness said if one were bent over *this way* dropping a pea, the skin might move; in another he said if

his arm was raised this way, it might make the skin move. To throw up his arms as an unarmed man might do when his antagonist draws a pistol, would apparently have the same effect on the skin as to throw up his arms with a weapon such as a steelyard in his hand. We can not set aside the verdicts of juries and reverse cases for argumentative reasons which would appeal to the jury as forcefully as to this court.

Being unable to agree with appellant's contentions, the motion for rehearing is overruled.

*Overruled.*