M. L. Morgan v. The State.

No. 14866. Delivered February 24, 1932.
Rehearing Denied May 25, 1932.
Reported in 49 S. W. (2d) 788.

The opinion states the case.

*W. T. Scarborough,* of Kenedy, and *W. H. Blanton,* of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Conviction is for murder; punishment assessed at confinement in the penitentiary for thirty years.

In brief, the state's testimony showed that in February, 1930, before the homicide the following August, the appellant had gone to the home of the deceased during his absence and there insulted, and was guilty of insulting conduct towards, the wife of the deceased. The state's testimony further showed that immediately upon the return home of the deceased on the same day his wife acquainted him with appellant's conduct towards her. There was testimony in the case offered by the appellant showing a series of threats that were made by the deceased concerning the appellant as a result of the information the deceased had received from his wife. The evidence further was that appellant left the country and stayed away until some time in May, when he returned to the neighborhood. It further shows that it was upon the advice of the appellant's

father and brother that he went away from home as above stated. On the night of the homicide, it appears that the appellant had driven with another party to a gin, appellant contending that he went to said gin for the purpose of seeing if he could get work. While he was there, the evidence also showed, deceased came to said gin and stopped his car, and it was at that time that the difficulty occurred. No eyewitness testified for the state as to how the shooting actually occurred, but by a dying declaration on the part of the deceased it is shown that the appellant had fired the fatal shot, and according to the deceased's statement "he didn't give me a dog's chance." An eyewitness, who was in the car with the appellant, and appellant's testimony, raised the issue of self-defense. The evidence further shows that, immediately after the shots were fired, the appellant fled and for some time it was not definitely known that the appellant was the man who had done the killing. The evidence on behalf of the state further shows that, when accosted by an officer as to whether he was the person who had done the killing, he did not admit it but called upon the officer to prove it on him. Upon the trial of the case, no issue was raised that the appellant did not commit the killing; in fact, he admitted it, but contended that he did it in self-defense. A pistol was found in the back of deceased's car after the shooting. The evidence showed that it had not been fired. It seems that all the issues arising under the evidence were pertinently submitted to the jury in such a manner that no exceptions or objections were taken to the court's charge.

The appellant filed an application for a suspended sentence.

By bills of exception 1 and 2, complaint is made of the receipt in evidence of the testimony of the wife of the deceased showing the insults that had been offered to her by the appellant and also of her communicating the same to her husband upon his return home on the same day. The bills also show that the evidence was offered by the state for the purpose of showing the motive for the killing of the deceased by appellant. The evidence showed that, previous to the time of the alleged insult the appellant offered to the wife of the deceased, there were friendly relations existing between appellant and the deceased and his family and the appellant was a frequent visitor to deceased's home before said time. The appellant offered evidence to show that the deceased had threatened him, and deceased had stated that his reasons therefor were that the appellant had insulted deceased's wife. As illustrating the relations of the parties and as showing motive, we think the evidence was admissible. If the previous acts of appellant go to illustrate and make manifest or explain the purpose and object of the crime committed, then all of said previous acts may be admitted in evidence to establish motive and intent. Weaver v. State, 43 Texas Crim. Rep., 340, 65 S. W., 534; Parnell v. State, 59 Texas Crim. Rep., 383, 128 S. W., 133. The testimony was directly

and pertinently admissible. As the evidence in this case showed, the entire case was tried on that theory, and the deceased's threats placed in evidence by the appellant arose and grew out of the insulting conduct of the appellant towards the wife of the deceased. This was brought into the case not only by the state, but also by the appellant. We therefore conclude that there was no error on the part of the trial court in admitting this evidence.

Bill of exception No. 3 complains of the admission, over the objection of the appellant, of the statement as to how the killing occurred, by the wife of the deceased as told her by her husband. This evidence was offered by the state as a dying declaration of the deceased. The testimony objected to was substantially as follows: "I had a conversation with my husband when they brought him in the house and he said that he was going to die, that he could not live. My husband was in his rational mind when he talked with me. He told me that Martin Morgan had shot him and I asked him where he was, and he said he was in the road. He said he had stopped at the gin and started in to see Mr. Jones, the manager of gin, and that when he started in there he said the first he saw was Martin and he was shooting at him, started shooting at him and he shot him in the right arm the first shot and didn't give him a dog's chance."

The bill further shows that she testified that her husband had only been in the house a few minutes when the statement was made; that she would ask him a question and he would answer, and that was how she got the whole story of the shooting. Defendant's objection to the testimony was that it was irrelevant, immaterial, and hearsay and not made in the presence or hearing of the defendant, and because it was not made as a voluntary statement, but was in reply to questions propounded deceased by his wife. The record shows that the evidence was admitted as a dying declaration, and, if it was admitted as a dying declaration and it was improperly admitted, appellant should have stated all the testimony connected therewith, showing the circumstances and environment under which it was admitted. This, he did not do. The bill also fails to contain, and show that it contained, all of the predicate laid by the state. It purports only to complain of the admission of certain statements, and it does not set out the entire declaration so that the connection in which the statements occurred may be seen, and the bill cannot be considered on that account. Kimberlain v. State, 47 Texas Crim. Rep., 235, 82 S. W., 1043; Bennett v. State, 103 Texas Crim. Rep., 279, 280 S. W., 594; Medina v. State, 43 Texas Crim. Rep., 52, 63 S. W., 331. The mere fact that certain of the dying declarations are made in response to certain questions asked does not take from them their voluntary and spontaneous character, unless they led to or suggested the particular answer. This is not shown by this bill. Pierson v. State, 18 Texas

App., 524; White v. State, 30 Texas Crim. Rep., 652, 18 S. W., 462; Ward v. State, 70 Texas Crim. Rep., 393, 159 S. W., 272.

By bill of exception No. 4, appellant complains of the following testimony of the witness D. B. Hunt: "I have known Martin Morgan, the defendant, all his life. I have known Mr. Morgan all his life, and never knew of him having any trouble. Well, I have never heard anything so overly wrong—just like other boys, nothing to amount to anything particularly, no more than just other boys. The only thing I know about his reputation is that I could not say it was overly good or overly bad— it was something like most boys passing around. I don't know that he had such a bad reputation, I don't know that his reputation was extra good as to that, just like that—had no trouble that I know of."

Appellant objected to the testimony on the ground that said answer to the question propounded by the state's attorney was not the answer required by the statute for the purpose of proving the general reputation of the appellant and said answer was not responsive to the questions. The question asked is not disclosed by the bill of exception. Hence we can not tell what question it was responsive to or who developed it. "A bill of exception complaining of admission of evidence must set out such facts or so much of the evidence as will verify the truths of the objections interposed. Enough of the surrounding facts and circumstances must be stated to enable the appellate court to determine the merits of the bill and the correctness of the ruling involved and to show that the evidence was inadmissible and the ruling was erroneous and hurtful to the cause of the appellant." 4 Tex. Jur., sec. 216; Moore v. State, 111 Texas Crim. Rep., 63, 11 S. W. (2d) 322; McDaniel v. State, 112 Texas Crim. Rep., 498, 17 S. W. (2d) 821; Holliman v. State, 108 Texas Crim. Rep., 92, 299 S. W., 249.

By bill of exception No. 5, appellant complains of the admission in evidence of the testimony of J. S. Zeise to the following effect: "I have known Martin Morgan for twenty years. I know the general reputation of the defendant, Martin Morgan, in the community in which he resided and is best known as to being a peaceable and law abiding citizen, or otherwise, and his reputation is not so good. I haven't heard anything bad against him up to the time of the killing of George Gordon, or a little before that I am swearing about is since I heard about the killing of George Gordon, and since February 22, 1930, that is all I know."

Appellant also objected to the following extract: "I heard something about this defendant many years ago—ten or fifteen years ago—and I had not heard anything against him from that time up to February 22, 1931."

The certificate of the trial court to this bill of exception does not establish the truth of the facts forming the basis of the grounds of objection stated in the bill, but merely shows that such an objection was made. The bill does not show whether the evidence complained of was elicited

on direct examination by the state or on cross-examination by the appellant. An examination of the record as a whole reveals that on the direct examination of this witness the witness stated that he knew the general reputation of the defendant, Martin Morgan, in the community in which he resided as being a peaceable, law-abiding citizen or otherwise, and it was not so good, and the matter of which the appellant complains in this bill arose, not upon the examination of the witness in chief by state's counsel, but upon appellant's cross-examination of the witness. Not only is this shown by the record, but a reading of the testimony as a whole shows that the witness was not adverse and did not give testimony adverse to that of the appellant. Having been elicited through the questions of the appellant, there is nothing in the bill or in the record which shows that the appellant, after the eliciting of said testimony, asked that the same be withdrawn from the consideration of the jury, but merely excepted thereto. We are, therefore, constrained to hold that the admission of said evidence is not shown to be prejudicial to the appellant and does not show reversible error.

Bill of exception No. 6 is in question and answer form, and contains the remarks of the court and the attorneys, thus contravening the statutes of this state and the decisions of this court, which require bills of exception to be in narrative form. (Code Cr. Proc., 1925, art 760). For that reason, we are unauthorized to consider this bill. Broussard v. State, 99 Texas Crim. Rep., 589, 271 S. W., 385; Robbins v. State, 100 Texas Crim. Rep., 592, 272 S. W., 175; Harry v. State, 102 Texas Crim. Rep., 124.

Appellant complains of the action of the trial court in refusing to give him a new trial on the grounds that the jury was guilty of misconduct because they discussed the case of Lunday v. State as to what became of said case and the amount of the penalty given in said case. Eight of the jurors were offered and testified on said issue, the juror who made an affidavit which was attached to the motion for new trial and seven other jurors. The testimony of said jurors consists of ten or eleven pages. Upon the conclusion of said testimony, the court overruled said motion for new trial. After a careful review of said testimony, we are not prepared to say that the court abused the discretion lodged with him. The judgment of the trial court sustaining the verdict will be upheld where the testimony conflicts as to whether there was misconduct on the part of the jury. St. Clair v. State, 104 Texas Crim. Rep., 423, 284 S. W., 571; Eubank v. State, 104 Texas Crim. Rep., 628, 286 S. W., 234. It is not shown by any of this testimony, as we view it, that the witness received other and new evidence in contemplation of our statute. The testimony merely showed that the case was referred to.

The appellant complains at length as to the misconduct of the jury because some of them testified in effect that the conduct of the appellant

towards the wife of the deceased had some effect on the amount of punishment they assessed against the appellant. As we understand this contention in behalf of the appellant, it is to the effect that the trial court and this court should go into and determine all the matters discussed by the jurors during their deliberations as to how they arrived at their verdict in this case to determine whether or not the jury decided it upon the proper grounds. "Upon grounds of public policy, the courts have almost universally agreed upon the rule that no affidavit * * * or other sworn statement of a juror will be received to impeach the verdict, or to explain it, or to show on what grounds it was rendered, * * * and the wisdom of the rule needs no argument to support it." Weatherford v. State, 31 Texas Crim. Rep., 530, 21 S. W., 251, 252, 37 Am. St. Rep., 828. See, also, Chapman v. State, 77 Texas Crim. Rep., 591, 179 S. W., 570; Watson v. State, 82 Texas Crim. Rep., 305, 199 S. W., 1113; Langerhans v. State, 116 Texas Crim. Rep., 13, 32 S. W. (2d) 472; Ross v. State, 100 Texas Crim. Rep., 295, 273 S. W., 582; Jack v. State, 20 Texas App., 656.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In substance, the various attacks upon the judgment discussed in the original opinion are renewed in the motion for rehearing. Additional rehearsal of the facts in detail is not deemed necessary. The admissibility of the testimony going to show the conduct of the appellant towards the wife of the deceased is deemed supported by the authorities cited in the original opinion and others, namely, Haley v. State, 84 Texas Crim. Rep., 629, 209 S. W., 675, 3 A. L. R., 779; Rice v. State, 54 Texas Crim. Rep., 149, 112 S. W., 299; Anderson v. State, 94 Texas Crim. Rep., 161, 249 S. W., 855.

Mrs. George Gordon (wife of the deceased) declared in her testimony that about the 25th of February, 1930, the appellant was guilty of insulting conduct towards her; that she told the deceased about the conduct of the appellant. The Gordon family moved to another neighborhood. She also testified to the dying declaration of the deceased which is set out in the original opinion.

The daughter of the deceased testified that she was present ta the time the dying declaration was made. She also testified that, when her father left home on the 19th of August (the day he was killed), she put

a pistol in the back of his car; that after the tragedy she found the pistol in the same position and locality in which she had placed it.

The testimony of the appellant, Martin Morgan, and Henry Ward is descriptive of the facts immediately attending the homicide according to the theory of the appellant. The testimony of the appellant is summarized as follows: He had been advised a number of times of threats to take his life by the deceased. Appellant, in company with Ward, went at nighttime to Baker's gin, where the appellant had previously worked and was at the time seeking renewed employment. Appellant and Ward parked their car awaiting the arrival of the man to whom appellant expected to make application for work. While there, some one passed in a car. After traveling a short distance, the man stopped his car, turned the lights on Ward and Morgan, got out of his car, and when four or five feet away from them, said: "Martin, is that you?" Appellant replied: "Yes, sir." Deceased said: "Get out of there. I want to settle with you. You know the word I sent you." He further said: "Who is that boy with you?" Appellant replied, "A boy from West Texas." Appellant had his pistol lying by his side in the car. As he jumped out of the car, he observed something in the hands o fthe deceased, which he could not identify as a pistol or other deadly weapon. Immediately after getting out of the car, appellant began firing and continued to fire until the gun jammed, when he left without knowing whether his shots had hit the deceased or not. Appellant explained his possession of the pistol in a manner indicating that he was not expecting to meet the deceased. According to the appellant, he fired the shots, having in mind the threats communicated to him and believing his life in danger.

Ward's testimony is in substance as follows: While sitting in their car waiting to see the engineer of the gin, a car passed. After traveling a short distance the car stopped, turned around, and, as it approached with the lights on them, the driver said: "Martin, is that you?" Appellant replied: "Yes, sir." The stranger then said: "Get out, I want to settle with you. Who is that boy with you?" Appellant said: "A boy from West Texas." At that time the deceased was about two steps from the car of Ward and the appellant. From the witness, we quote: "I noticed the man at the time closely. He had something in his right hand, I could not swear what it was, I don't know what it was. * * * As the shooting began I was getting out of the car. * * * I did not know this man that walked up by the side of the car. I didn't know a man by the name of George Gordon. * * * After the shooting I went back to the car and drove home."

On cross-examination, the witness said that the shots all sounded alike. After the shooting Morgan asked: "Did I hit that fellow?" Ward said: "I told him I didn't know." The witness could not say that there

were any shots fired by the deceased, but that a number of shots were fired. As stated above, he said they all sounded alike.

Circumstances were introduced which were sufficient to show that the deceased used no pistol. The testimony of the appellant and his witnesses does not affirm that the deceased was armed with a pistol or other dangerous weapon. That the appellant had been told that, because of his insulting conduct towards the wife of the deceased, threats had been made to take his life, was affirmed by him and his witnesses. The testimony of the wife of the deceased touching the misconduct of the appellant towards her was denied by the appellant.

If the bills of exception complaining of the testimony introduced by the state on the issue of a suspended sentence and bearing upon the reputation of the appellant were so comprehensive as to recite all of the facts justified by the statement of facts, there would be, in the opinion of this court, no harmful error disclosed.

Murder, as defined by the statute, is but a single offense, with the penalty dependent upon the finding of the jury that there were mitigating facts upon which they could conclude that in committing the homicide the accused acted without malice. See Herrera v. State, 117 Texas Crim. Rep., 389, 36 S. W. (2d) 515. There is no discretion vested by law in this court, where the evidence shows murder with malice aforethought, to annul the verdict because there was evidence upon which the jury might have mitigated the penalty.

Since the affirmance of the case, we have given both the law and the evidence the most careful scrutiny and consideration of which the members of this court are capable, but are constrained to conclude that the record, as presented, does not authorize us to interfere with the verdict rendered by the jury and approved by the trial court. See Gilliam v. State, 113 Texas Crim. Rep., 108, 18 S. W. (2d) 637; Hawkins v. State, 99 Texas Crim. Rep., 571, 270 S. W., 1025.

The motion for rehearing is overruled.

*Overruled.*