### GEO. W. SMITH v. THE STATE.

#### No. 2318.   Decided May 7, 1902.

**1.—Continuance—Diligence.**

Where the application for continuance made at the August term showed that, though the absent witness was under bond for her appearance, the said bond was not forfeited when the case was continued by the State at the previous term in February; it not being shown that the witness was then in default the diligence was sufficient and the continuance should have been granted.

**2.—Same—First Application to Prove Alibi.**

A first application for a continuance to prove an alibi by the absent witness should have been granted where the diligence is shown, as stated in the above paragraph, notwithstanding defendant's wife had testified to the alibi as a witness on the trial.

**3.—Dismissal During Trial as to a Codefendant—Practice.**

It was not error to permit the district attorney to dismiss the prosecution as to a confederate during the trial, and as soon as the testimony in the case is finished, although the better practice would have been to enter such dismissal before the trial or after the trial had been concluded.

**4.—Impeachment of Witness.**

It was competent for the State, on cross-examination of a witness for defendant, to ask her if she had not stated to a witness that she was induced to falsify her testimony because of threats by her uncles, brothers of defendant, and because she was afraid of them and afraid, if she testified truthfully, she would lose her home. And, upon her denial of such statements, it was competent to impeach her by proving, by the impeaching witness, that she had made such statements to him. Davidson, presiding judge, dissenting.

**5.—Same—Evidence in Rebuttal of the Impeachment.**

Where a witness for defendant had been asked if she had not stated that she was induced to change and falsify her testimony on account of threats by, and her fears of, the Smiths (relatives of defendant), which she having denied, the State was permitted to impeach her by the witness to whom she made said statements. Held, that, inasmuch as her testimony had been impugned, defendant had the right, in rebuttal, to prove by the Smiths that they had not threatened or used any coercive measures to induce her to make any statement against defendant or change her testimony in any manner.

**6.—Murder—Evidence—Motive.**

On a trial for murder, it was competent, as tending to show defendant's motive and desire to get rid of deceased, that defendant had admitted that he was engaged in counterfeiting, and that deceased knew this fact.

**7.—Same—Evidence Insufficient—Uncorroborated Testimony of Accomplice.**

A conviction of murder in the first degree will not be sustained which rests alone upon the uncorroborated testimony of an accomplice.

Appeal from the District Court of Bell.   Tried below before Hon. John M. Furman.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The indictment charged appellant and one Dee Harville jointly with the murder of Henry Harville, on the 11th day of March, 1900, by striking him with an ax.

The defendants were jointly arraigned and placed upon trial, but Dee Harville, having turned State's evidence, testified at the trial against appellant, and, as soon as the testimony was finished, the district attorney dismissed the prosecution as against him, and continued the trial alone against appellant Smith.

The record shows that deceased was a brother-in-law of appellant, his first wife having been appellant's sister. Deceased was a man of most violent and brutal passions and treated his family in the most cruel manner, frequently beating the mother and her children. In fact the record shows that he had stated that he had killed his first wife and also his little son by beating them to death. In addition to this, he had compelled Pearl Harville, his young daughter, to submit to incestuous carnal intercourse with him. The day before the killing he threatened that he intended killing all the rest of the family. Dee Harville, the eldest son, was a young man under 21 years of age. His sister Pearl had informed him of his father's outrageous treatment of her. Before the trial, Dee and Pearl had both stated that Dee killed his father with an ax while his father was endeavoring to force his sister Pearl to submit again to his carnal passions; and the same statement had frequently been made to the officers by Pearl. Some time after Dee Harville was arrested, and while he was in jail charged with the murder, he sent for the officers and stated to them that he did not kill his father, but that George Smith, this appellant, had committed the murder, and he so testified as a witness on the trial. It was proved by the sheriff and other officers that Pearl Harville, before the trial, had stated to them that her uncle, George Smith, had killed her father, and that her brother Dee did not kill him.

At the trial Pearl was a witness for defendant, and she testified, that her father was killed by her brother Dee, and not by appellant Smith; and she denied that she had stated to the officers that appellant Smith and not her brother Dee had killed her father. As to her denial of said statement, she was impeached by the officers, as shown in the opinion below, and was permitted to testify to the effect that she had changed her testimony on account of her fears of her uncles, Smith's brothers.

It was shown that appellant Smith had made and was in possession of molds for counterfeiting coin money, and that deceased had seen these molds, and had subsequently threatened to inform on defendant and have him prosecuted for this offense. The theory of the State was, that Smith killed Harville to get rid of him as a witness in regard to this matter; and there was also evidence tending to show that Smith killed him in order to get his money and property.

This is a very concise summary of the evidence, which is very volum-
inous.

*James B. McMahon* and *Jno. D. Robinson,* for appellant.—We submit
that the court erred in permitting the State to impeach the witness
Pearl Harville by the testimony of Dee McKay. Pearl Harville testi-
fied in behalf of defendant, and on cross-examination was asked the
following question: "Did you not make a different statement to Sheriff
Sam Sparks, Deputy Sheriff John G. McKay and to myself, at the jail
from the one you have made on the stand, and did you not state to us
that George Smith killed your father?" To which question the wit-
ness answered: "I don't remember; but yesterday, while I was on my
way home from the courthouse, Dee McKay told me that if I would
swear the same thing that Dee Harville had sworn that he would board
me at a hotel." When this statement was made as testified to by the
witness Pearl Harville, she had been sworn as a witness and was then
under the rule. The State, for the purpose of impeaching said Pearl
Harville in regard to the statement as above set out, recalled her and
propounded to her the following question: "Is it not true that what
Dee McKay did say to you was not in substance this: 'Miss Pearl, are
you going to testify the truth?' That you replied that 'I am afraid
to swear the truth;' that if you swore the truth the Smiths would have
nothing to do with you, and that after the trial was over you would have
no home to go to; and did not Mr. McKay say that you could go to your
friends and stay with them; and did not you reply that you had no
friends to go to; and did not Mr. McKay then say that if you had no
friends to go to you could go to a hotel; and did you not reply that you
had no money to pay your way at a hotel; and did not Mr. McKay then
reply that if no one else would help you, he would help you pay your
way at a hotel?" To which questions the defendant then and there
objected on the following grounds: (1) That the above statement made
by the witness Pearl Harville was made on cross-examination and
brought out by the State; (2) the statement was in regard to an im-
material and irrelevant matter; (3) because it was purely hearsay;
(4) because the question asked called for the whole conversation, which
was irrelevant, immaterial, and was calculated to injure the rights of
defendant before the jury. The objections were overruled by the court
and the witness answered in the negative. The State then placed on
the stand Dee McKay and contradicted and impeached the witness Pearl
Harville, stating substantially the matters suggested by the above ques-
tions.

We believe that each and every objection of defendant should have
been sustained by the court, but especially insist that the witness Pearl
Harville could not be impeached or contradicted as to such statement,
for the reason that the statement was drawn out on cross-examination
and related to a matter collateral to the issue. In Drake v. State, 29
Texas Crim. App., 270, this court said: "When a witness is cross-

examined on a matter collateral to the issue, his answer can not be subsequently contradicted by the party putting the question. Nor is it proper to allow a witness to be cross-examined as to any matter which is collateral and irrelevant to the issue merely for the purpose of contradicting him with other evidence." We call the court's special attention to the Drake case, supra, and authorities cited, as we believe it to be in point. It was held in the case of Mitchell v. State, 38 Texas Crim. Rep., 170, 41 S. W. Rep., 816, that a witness can not be impeached by proof of contradictory statements, which are hearsay and purely collateral. In support of this proposition that the statement made by the witness Pearl Harville was purely hearsay, we cite the court to the cases of Barber v. State, 23 Texas Crim. App., 199; Tyler v. State, 11 Texas Crim. App., 388; Estep v. State, 9 Texas Crim. App., 366; Favors v. State, 20 Texas Crim. App., 155; Maines v. State, 23 Texas Crim. App., 568. This court also held that a witness could not be impeached upon any statement made by such witness while under the rule. Brown v. State, 3 Texas Crim. App., 310.

We submit that the court erred in refusing to permit the defendant to prove by Jim and Ben Smith that they had made no threats against the life of Pearl Harville for the purpose of inducing her to testify for defendant Smith, and to prove that they had not attempted to induce said witness by persuasion or otherwise to testify in behalf of the defendant. We insist that this action of the court is material error, because the district attorney asked witness Pearl Harville, while on the stand, if it was not a fact that her uncles, Ben and Jim Smith, had threatened to kill her if she did not testify in favor of George Smith; and because the State was permitted to prove by Dee McKay that the witness Pearl Harville stated to him that she was afraid to tell the truth because she feared the Smiths. It is true the witness Pearl Harville testified that her uncles Ben and Jim Smith had not threatened her, and if the State had not followed up this question by the testimony of Dee McKay, the testimony offered by defendant may not have been admissible. In view of the question asked, and in view of the testimony given by the witness Dee McKey, the jury may have drawn the conclusion that the witness Pearl Harville had been induced through fear of Jim and Ben Smith (brothers of defendant) to testify as she did upon the stand and thereby discredit her. Pearl Harville was a very material witness for defendant, and the attempt on the part of the State to thus discredit her testimony was highly injurious to the rights of defendant. Can it be said that under such circumstances the defendant would not have the right to show that no such influence had been exercised over the witness? By permitting these witnesses to testify the defendant would have shown that no such influence had been exerted over the witness Pearl Harville, and would have corroborated her statement on this point. We believe this contention was sustained by this court in the case of Messer v. State, 63 S. W. Rep., 643.

It is further contended by appellant that the court erred in dismiss-

ing the case against Dee Harville, codefendant with defendant Smith, on the oral motion of the district attorney, at the conclusion of the evidence, and in stating in the presence and hearing of the jury that he dismissed the case against Dee Harville. The defendant Dee Harville announced "not guilty," and continued in the case until the conclusion of the evidence as above stated. He took the stand and testified that George Smith killed his father about 12 o'clock in the night, and that he took no part in the homicide. He swore, however, that he had at all times stated to the sheriff, his attorneys, and before the grand jury, that he himself killed his father, and that the defendant George Smith had nothing to do with the killing. That the first time he told anyone that George Smith killed his father was about three weeks before the trial, when he at the jail told Jim Wilson and then the officers. W. W. Hair testified that he told the witness Dee Harville that if he would swear "the truth, the whole truth, and nothing but the truth" that he would not prosecute him, but would dismiss his case. The defendant proved by Pearl Harville that she was present at the time and place of the killing of her father, and that George Smith was not present, and that her brother Dee Harville killed deceased for his attempting to outrage her. Defendant also proved by Mrs. George Smith that on the night the killing occurred defendant was at home with her, and was not at the place of the killing when it occurred, but was in bed with her. We submit that the action of the court in dismissing the case at this stage of the trial, upon the oral motion of the district attorney, made in the presence and hearing of the jury and under the circumstances above stated, was calculated to impress upon the jury that the court was of the opinion that Dee Harville had complied with his agreement, made with the district attorney, and had told the truth, and should be discharged, and that defendant alone was guilty.

*Rob't A. John,* Assistant Attorney-General, for the State. [No brief for the State found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

Appellant complains of the action of the court overruling his motion for continuance, and in refusing to grant him a new trial predicated on that ground. The application for continuance is based on the absence of Mrs. Walter Palmer, by whom appellant expected to prove an alibi; that is, that on the night of the homicide she remained all night at the house of Walter Palmer, the husband of the absent witness. Appellant shows that the witness was placed under bond for her attendance at the previous February term of the district court, this trial being at the August term. It is not shown in the application that the witness attended the court at said February term, nor does the court in his explanation show that she was not there, but merely says that the bond

of the witness was taken for her appearance at the February term. There is no forfeiture shown of the bond, and the State continued the case at said February term; so it is not shown that the witness was then in default. We are inclined to the opinion that diligence was shown. We also believe that the testimony of said witness was material. True, appellant proved his alibi by his wife, and to a certain extent by Walter Palmer. But this was his first application, and appellant was entitled to have the testimony of this witness as to his alibi. The application for continuance should have been granted.

We have examined the bill of exceptions with reference to the action of the court in allowing the district attorney to dismiss the case against Dee Harville, who was indicted for the same offense as appellant. The case was dismissed against this witness, after he had testified, and during the trial of this case. While the better practice would have been to have dismissed the case against the witness before the trial, or after the trial had been concluded, yet we can not say there was reversible error in the action of the court allowing the State to dismiss the case pending the trial. Instead of the jury regarding this action as an expression on the part of the court that the witness had told the truth, as to the homicide, it would rather seem that he was testifying under a bargain with the State; and the effect of the dismissal in the hearing of the jury would in a measure handicap the State. At any rate we do not believe any prejudice to defendant is shown by this action of the court. During the progress of the trial defendant put Pearl Harwille on the stand, and proved by her, among other things, that Dee Harville (her brother) had killed her father, and that appellant Smith was not there and did not participate therein. On cross-examination the district attorney, in order to impeach her, asked her if her uncles, Ben Smith and Jim Smith, had not threatened to kill her if she did not make the statement she had sworn on the stand. To which the witness answered no. The State then undertook to impeach her, and inquired of her if she had not, in a conversation of yesterday with Dee McKay, at a time and place named, told him that she could not tell the truth about the homicide; that she had no home to go to; that the Smiths would have nothing to do with her; and that he, McKay, told her, if she had no home to go to and would tell the truth, she could go to a hotel and he would pay her way. She denied making this statement to McKay; but stated that on the occasion inquired about Dee McKay told her, if she would swear the same thing that Dee Harville had sworn to, that he would board her at a hotel. The State placed said McKay on the stand for the purpose of impeaching said witness Pearl Harville, and on being interrogated, he testified that he had a conversation on yesterday with Pearl Harville; and that she told him she was afraid to tell the truth, for if she did, the Smiths would have nothing to do with her, and after the trial was over she would have no home to go to; and that he said to her that she could go to her friends and stay with them, and she replied she had no friends; and then he

told her, she could go to a hotel, and if she had no money to pay her way, or no one else to help her, that he would pay her way at the hotel.

This was objected to by appellant on the ground that the above statement made by the witness Pearl Harville was made by her on cross-examination by the State and that the same was in regard to an immaterial and irrelevant matter, and was purely hearsay; and because the question asked called for the whole conversation, which was irrelevant, immaterial, and was calculated to injure the rights of defendant before the jury. The court· says in explanation that the witness first answered the impeaching questions, and then on cross-examination the balance was brought out; and further the statement as made by Pearl Harville was voluntary and not in response to questions by the State, and the State was permitted to cross-examine on it. It occurs to us that the proper practice on the part of the State would have been, if the answer of Pearl Harville was voluntary and not responsive to the question asked, to move to strike it out on that account. However, we believe it was competent for the State, in impeachment of the witness Pearl Harville, to prove by her, if it could, that she was influenced to falsify her testimony because of her fears of the Smiths or that she would lose her home, and that if she denied this, to impeach her, as was done by the witness McKay.

In this connection appellant presents another bill, which shows that he proposed to prove by the Smiths that they had not threatened the witness Pearl Harville, or used any coercive measures to induce her to make any statement against appellant, or to change· her testimony. The court refused to permit this testimony. In this we believe there was error. True, the witness Pearl Harville denied that she had made the statement to McKay that she was afraid of the Smiths, yet McKay testified that she did make such statement; and· inasmuch as her testimony was impugned, we believe it was competent, and the court should have permitted the testimony of the two Smiths as above stated.

As presented in another bill of exceptions, we think it was competent to show that appellant admitted that he was engaged in making counterfeit money, and to show that deceased knew this, as furnishing a motive to appellant to commit the homicide. Of course, testimony in regard to the details of his counterfeiting was not admissible, but merely so much as showed that deceased, within the knowledge of appellant, knew that he was engaged in counterfeiting, and that appellant was afraid of him and desired to get rid of him on that account.

It is also insisted that the verdict is not sustained by the evidence, there being no evidence corroborative of the testimony of the accomplice, Dee Harville, who was the main State's witness. We have examined the record carefully in this respect, and in our opinion the contention is correct. Harville was the only witness who testified to facts incriminating appellant. He testified, in effect, that he was present on the night of the homicide, and that he saw appellant slip into the room where he and his father and sister were, and saw him strike deceased

in the head with an ax, and then details the circumstances of his taking his body out, and he assisting him, and throwing it in an old well on the premises. He then testifies in regard to what he himself did under the command of appellant in destroying and disposing of clothing, etc., of deceased, and all evidence of the homicide. Also that he told false stories as to the absence of his father, because of the command of Smith (appellant) and his fear of him. This witness was shown to have previously confessed the crime himself and exculpated defendant. Pearl Harville, who he admits was present at the time or part of the time when the homicide was committed, testified that her brother Dee Harville killed deceased, and that appellant was not there. As stated heretofore in connection with the motion for continuance, appellant proved an alibi on the night of the homicide; that is, that he was not on the premises, but at another house in the neighborhood, where he stayed all night. Certainly if there ever was an accomplice who required corroboration, it was this accomplice, who at first confessed his guilt of the offense and exculpated appellant. But we have looked in vain through this record for any testimony showing any facts proven by outside witnesses tending to corroborate him and inculpate appellant in the homicide. It is suggested by the State that the motive for the homicide on the part of appellant was robbery, and some corn that formerly belonged to deceased was traced to his possession after the homicide, and some money—among other things, a quarter-dollar gold piece, which was a peculiar coin known to have belonged to deceased. But this witness himself accounts for appellant's possession of these articles, and it is not gainsaid by any other testimony. He shows that deceased owed appellant some corn, and that a day or two after the homicide he hauled the corn to appellant. It is also shown that he took from deceased, or his possession, the money which he had, and that he subsequently gave some of this, including the quarter-dollar gold piece, to appellant some days after the homicide. Certainly, if robbery was the motive of appellant, he would have taken the money at the time of the homicide. However that may be, the record explains, without controversy, how appellant came into possession of the above named articles, and that it was through the witness Dee Harville. Unquestionably this can not be claimed as corroborative evidence outside of the accomplice testimony; and as stated before, we have searched in vain for any fact or facts outside the accomplice evidence tending to connect appellant criminally with the offense charged. He admits that he knew of it afterwards; that he knew of it through Dee Harville, and that he concealed the offense for a time. But the fact that the homicide was committed appears to have gotten out through appellant. In the face of this record, evidently the homicide was committed; but there is nothing to incriminate appellant, except the afterthought of Dee Harville, who appears in this record as a self-confessed patricide. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, PRESIDING JUDGE.—I agree to the disposition of the case, but do not believe it was permissible to impeach Pearl Harville by the witness McKay. If the Smiths had spirited Pearl Harville from the country, this could not be evidence against appellant, unless he was a party to it; much less could she be impeached by showing she expressed fears that the Smiths would or might turn her out upon the world. Under no rule could her opinion be testimony. Drake v. State, 29 Texas Crim. App., 265. But having admitted McKay's evidence, it is clear the Smiths ought to have been permitted to testify as stated in the bill of exceptions.