## PEDRO DE LEON v. STATE.

### No. 2071.  Decided March 19, 1913.

**1.—Murder—Exculpatory Evidence—Charge of Court.**

Where, upon trial of murder, there were no eyewitnesses to the transaction and the State introduced in evidence statements of the defendant made shortly after the homicide to the officers, in which he claimed self-defense, the failure of the court to submit to the jury the question that unless the State disproved the statements of the defendant, he should not be convicted, was reversible error.

**2.—Same—Evidence—Motive—Knowledge of Defendant.**

Where the State sought to prove motive on the part of defendant, it was reversible error to permit it to introduce testimony that the deceased intended to marry the sister of defendant and was about to procure a marriage license, without showing that defendant had knowledge of these matters; besides, the court failed to limit said testimony.  Following Phillips v. State, 22 Texas Crim. App., 139, and other cases.

**3.—Same—Evidence—Motive—Knowledge of Defendant.**

Upon trial of murder, where the State sought to show motive on the part of defendant, it was reversible error to admit testimony that the sister of defendant was about to marry deceased and shortly after the homicide died from the effects of arsenic poison, without showing any knowledge of or connection with defendant with reference to these matters.

Appeal from the District Court of DeWitt.  Tried below before the Hon. John M. Green.

Appeal from a conviction of murder in the first degree; penalty, life imprisonment in the penitentiary.

The opinion states the case.

*Davidson & Bailey,* and *E. C. Gaines,* for appellant.—On question of motive and knowledge of defendant: Price v. State, 65 S. W. Rep., 909; Attaway v. State, 55 S. W. Rep., 45; Barkman v. State, 52 S. W. Rep., 73, and cases cited in opinion.

On question of failure of court to limit testimony: Davidson v. State, 22 Texas Crim. App., 372; Morrison v. State, 40 Texas Crim. Rep., 473.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was given a life sentence for murder in the first degree.

This killing occurred in Yorkton, De Witt County, where appellant and deceased had known each other for some length of time.  The State's contention was, and the testimony offered was to the effect, that there had been previous ill-feeling between the parties.  About a year prior to the homicide appellant had cursed deceased and in effect had challenged him to fight.  Mitigating this immediate circumstance, however, the facts show that the deceased in quite a crowd of Mexicans and negroes "was poking fun at and hurrahing," as

the witnesses call it, an old man when appellant interfered and his remarks to deceased in that connection were in resentment of the overbearing imposition upon the old man. It is also shown by a State's witness that about a month prior to the homicide appellant had stated to him he had had trouble with deceased and had knocked him out of the buggy with his fist, and if he did not quit his foolishness he was going to hurt him "some of these days." The State's witness Perez disclosed in his testimony that he had had quite a lot of trouble in the courts in which he had been prosecuted in several cases, among others, one for homicide. Appellant did not testify in his own behalf, but from the testimony of witnesses offered by the State, the homicide must have occurred about dark. About 8 o'clock appellant saw the City Marshal and informed him of the difficulty, having spent considerable time seeking the Marshal before finding him. Appellant made a statement to the night watchman, and Marshal Gus Metz, which was introduced against him, telling them he had a difficulty on the other side of the creek in which he had been attacked with a knife. In connection with this statement he exhibited a cut on his clothing and the knife which he claimed to have picked up after the fight. He further stated that he had struck his assailant on the head a time or two, knocking him down, one of the licks causing the gun to discharge and causing his assailant to run away, and that he did not know whether the gun shot hit him or not. The party who had made the attack proved to be deceased, whose name was Arrellano. Some of the evidence discloses that appellant had a cane patch which he had visited, to detect, if he could, who had been committtting depredations upon it. He had been to this cane patch and was returning home when he met the deceased and the trouble ensued. Appellant carried with him what he called a 'target rifle. His statement was to the effect that the deceased attacked him with a knife and that he struck him on the head with the gun and deceased dropped the knife and he picked it up and brought it away.

1. It is not the purpose of this opinion to follow all of the exceptions reserved and objections to the charge as presented in the record and to this court for revision. It is contended that inasmuch as the State had put in evidence the statements of the defendant which connected him with the homicide, and the exculpatory matters relieving him from culpability, that it was incumbent upon the court, under the ruling in the Pharr case in the 7 Texas Crim. App., 472, and the subsequent decisions following that case, to submit to the jury that unless the State disproved the statements of the defendant he should not be convicted. Under the facts of this case we are of opinion the court should have submitted the law as laid down in that line of authorities. There were no eyewitnesses to the transaction and the statements appellant made were shortly after the trouble. These statements, having been made to the officers to whom he surrendered. The State used these statements and it was in this manner appellant was

connected with the homicide. By said statements the issue of self-defense was clearly presented.

2. The State proved by the father of the deceased that the sister of the defendant was expected to marry his son, or rather that his son expected to marry the sister of defendant, on the day subsequent to the homicide. That his son had made no preparation, however, to get married but that he, the witness, was going with his son the following day to get the license and that all that he knew about the matter was what his son, the deceased, had told him. This all occurred with out the knowledge of the appellant. There are quite a number of reasons urged why this testimony was not admissible. Without reviewing them it is sufficient to say that this testimony could only be admitted against the defendant upon the theory of motive under this record. In order to use this character of testimony against the accused it must be shown in some way that he was aware of the relations between deceased and his sister and of the proposed marriage and was urging objection to it. If appellant knew that deceased was going to marry his sister or was contemplating doing so, and was opposed to it, it might be used as a circumstance before the jury, but it could not be used against him in the absence of any knowledge on his part of the existing relations and circumstances. This has been decided so often we hardly deem it necessary to cite authorities to support the proposition. However, we might refer to Phillips v. State, 22 Texas Crim. App., 139; Golin v. State, 37 Texas Crim. Rep., 90; Price v. State, 65 S. W., 909; Attaway v. State, 55 S. W., 45; Barkman v. State, 52 S. W., 69. Facts were introduced to show that such relations did not exist between deceased and appellant's sister.

3. There is another serious proposition urged for reversal which we think presents error. There was testimony, through Dr. Allen and others, to the effect that seven or eight days subsequent to the homicide the sister of appellant, referred to in the previous proposition. died from the effects of arsenic poison. There was no possible evidence of this fact but Dr. Allen testified while he did not make an examination to discover whether the girl died from arsenic poison or not, yet, he states the symptoms attending her death so indicated. There was no analysis made to discover whether she was or was not poisoned. The mother of the girl testified that she did not know what caused the death of her daughter; that she had been sick since the preceding October, and grew worse a day or two before her death, and violently so the day before her death. The State placed the mother of the deceased girl on the stand and asked her the cause of the death, and having proved by her that she did not know, the State thereupon offered the testimony of Dr. Allen who testified that he thought the girl died an unnatural death. Just why this testimony was admitted is not clear, whether as impeaching evidence or to show motive. The court, in a lengthy discussion with the attorneys in the absence of the jury, remarked at different stages of the discussion

that it was admitted first for one and then another reason. It could not have been offered for any reason. The testimony of Dr. Allen could not impeach the mother's testimony, nor could it show motive on the part of the defendant. This occurred some days subsequent to the homicide and the defendant was not present and had no connection with the matter. It seems to have been the idea that the girl committed suicide. This testimony was clearly inadmissible from any standpoint. If the testimony had been legitimate for the purpose of impeachment. it would have been the duty of the court to limit it to impeachment, but we are of opinion it could not be used to impeach the mother. The bill of exceptions showing the above matters is quite lengthy and prepared by the court, as he states, because the bill offered by appellant's counsel was not satisfactory to the court. Without going further into the question suggested for revision we are of opinion that we have said enough to indicate to the court that those matters and things which occurred in the absence of defendant and without his knowledge, should not be used as testimony on the trial of his case. It is evident the State was seeking a motive and the testimony was to overcome the statements of the defendant, made to the officers and introduced by the State, connecting him with the homicide. Those statements were exculpatory and it devolved upon the State to meet those and overcome them with some character of testimony, but that testimony must be legitimate,—such as is authorized by the law and the rules of evidence.

For the reasons indicated the judgment is reversed and the cause is remanded.

<em>Reversed and remanded.</em>