James McNeill BAILEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 49983.

Court of Criminal Appeals of Texas.

Sept. 23, 1975.

Rehearing Denied Feb. 4, 1976.

Second Rehearing Denied Feb. 25, 1976.

Emmett Colvin and Joe Max Hendley, Dallas, for appellant.

John Lawhon, Dist. Atty., Alan L. Levy, Asst. Dist. Atty., Denton, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

BROWN, Commissioner.

The conviction is for murder; the punishment, assessed by the jury, life imprisonment.

At 1:45 P.M. on February 11, 1974, Shirley Seiber, the deceased's neighbor, arrived home for an appointment with the deceased, Imogene Apple. At that time Mrs. Seiber saw the deceased at her mailbox and they had a brief conversation. Afterwards, Mrs. Seiber went into her house and remained there for fifteen to twenty minutes. Then she went through the back yard of the deceased's residence and knocked on the sliding glass door that leads into the den. She tried the door and found that it was locked. At that time, she testified that she heard a "bumping racket." Mrs. Seiber walked around the outside of the house past the side utility door and came in through the garage door leading into the den.

Upon entering this door, Mrs. Seiber heard more "bumping noises" and then heard a loud groan. She opened the utility door and saw the deceased lying on the floor, groaning.

Mrs. Seiber then closed the door, went back through the garage to the outside and called out to the appellant. She explained that she believed he was at the house because his automobile had been "setting out by the fence in the back" when she arrived. Mrs. Seiber returned to the den through the garage and began to telephone an ambulance. Approximately twenty seconds had elapsed from the time she closed the utility door, went outside and returned to the den. During her trip outside around the garage and into the house, Mrs. Seiber never saw the appellant in the back yard area.

Prior to the completion of Mrs. Seiber's telephone conversation, Freddy Wilson walked up to the sliding glass doors in the back, where he was unable to enter because the doors were locked. As Mrs. Seiber put the telephone down, the appellant emerged from the utility room where the deceased lay. Appellant had blood on his hands, his collar, and just below his collar. The appellant urged Mrs. Seiber to leave the house to summon an ambulance. While Mrs. Seiber was in the den, she stated that no one could have entered the house either through the glass doors in the den or through the outside utility room door.

Freddy Wilson went to the deceased's residence to do some plumbing work. Wilson went up to the sliding glass door and knocked. At that time, he saw Mrs. Seiber in the den on the telephone. Mrs. Seiber showed Wilson the utility room where the

deceased lay. Wilson testified that the deceased was lying face down with her head up against the door that leads to the outside. There was a considerable amount of blood in the room and obvious injuries to the head of the deceased.

Freddy Wilson first saw the appellant kneeling over the body. He noticed blood under the appellant's chin and on his trouser leg. Also, Wilson stated that when he left his truck and came up to the house he did not see anyone going toward the house.

An ambulance attendant arrived and found the deceased lying on the floor with her head up against an outside door. The appellant, who was standing nearby, had blood on his shirt, face, chin, hands, and arm.

Officers of the Lewisville Police Department arrived and sealed off the premises. Captain Edge testified that when he arrived the outside door to the utility room was locked from the inside. Also, the other entrances and windows into the house, with the exception of the garage door and the sliding glass door, were locked. There was no evidence of any forcible entry nor did anything appear disturbed except for a small security box containing legal papers, although there were sizeable amounts of money present in the house.

Captain Edge interviewed the appellant on the scene. The appellant stated to him at that time that he had come to the deceased's house to discuss a land matter with her and that upon arriving he had gone out to a pasture in back of the house. He stated that as he was returning to the house, in close proximity to the barn, he heard someone yell and he ran to the house, entering the residence through the outside utility room door.

Officer Galler spoke with the appellant and appellant told him that "he had been at the barn for about fifteen minutes and had just come back up to the house." Officer Huddleston was told by the appellant that "he had started down toward the barn area

and he heard someone call his name and he went back up to the house."

In his first ground of error, appellant contends the court erred in admitting evidence intended to demonstrate appellant's motive. The evidence complained of is that the deceased had made an appointment for the afternoon of the murder for the express purpose of executing a will. The deceased's will in existence prior to her death provided that twenty-one acres of land worth over $400,000 pass to the appellant. Gerald Stockard, an attorney, testified that appellant was aware of this provision, and that appellant had attempted to persuade the deceased to transfer title to the property to him. Kenneth Howard, a surveyor, testified that appellant approached him two months before the murder about preparing a topographical map of part of the deceased's property. Wendell Wood, a bank president from Virginia, testified that appellant borrowed twenty thousand dollars from him in order to start a racket club in the Lewisville area. Mrs. W. Greer testified that appellant wanted her to convince the deceased that appellant's country club project was a good idea. Roman Faltejsek testified that two days before the murder appellant told him he was planning a country club, but that Faltejsek should not tell the deceased. On the day of the murder, appellant met with a bank official in Sherman about a loan for building a country club in Lewisville. On his financial statement, appellant listed twenty-two acres of land valued at $400,000 in the name of Apple/Bailey.

Where a case, such as the one before us, is dependent on circumstantial evidence for its proof, the rules of evidence will not be so stringently applied so as to exclude evidence which sheds light on the occurrence. *Knapp v. State*, Tex.Cr.App., 504 S.W.2d 421. The deceased's plan to alter her will was a link in the chain of proof that appellant murdered her to inherit her property. Although standing alone it might not support a verdict, when viewed in light of the surrounding circumstances,

the evidence complained of is relevant and, therefore, admissible. *Knapp, supra.* No error is shown.

In his second ground of error, appellant contends the court improperly admitted an incriminating oral statement in violation of Art. 38.22, V.A.C.C.P.

Police officers arrived at the scene and found three suspects; appellant, a neighbor, and a plumber. After a brief investigation, appellant was permitted to leave. Captain Edge, who was participating in the investigation, left the scene of the offense at about 6:00 P.M., after officers had found a metal pipe with blood and flesh adhering to it, the deceased's will, and a coat with a pair of blood-stained gloves in one pocket. Edge was recalled by radio to the scene by another officer who told Edge that appellant had returned and wished to talk to Edge.

When Edge arrived, appellant and Officer Perkins were seated at a table. Edge pulled up a chair and sat down facing appellant. Edge said, "I understand you wanted to talk to me." Bailey replied, "Yes, I did not tell you the whole or the exact truth about everything." Edge asked, "Like what?" After a pause, appellant replied, "I hid the murder weapon, a jacket, and the gloves." Edge then placed appellant under arrest and gave him his statutory warnings.

Appellant relies heavily on *Ancira v. State,* Tex.Cr.App., 516 S.W.2d 924, where we held that an incriminating statement made to a police officer while in the police car was inadmissible, the Miranda warnings not having been given. In *Ancira,* however, the police officer testified that he wanted to talk to the appellant about selling heroin, and asked the appellant if he "would ride around" for the purpose of interrogating him.

Here the appellant did not speak with police officers at their request, but initiated the conversation which led to the statement complained of. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 964

(1966), defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." The fact that the accused and police officers are together will not render a statement inadmissible if the circumstances do not fall within the definition of custodial interrogation. The fact that appellant had been free to go and had chosen to return in order to speak with Captain Edge removes this case from the proscription of *Miranda.* Although decided before the applicability of *Miranda,* we believe that the facts of *Taylor v. State,* Tex.Cr.App., 420 S.W.2d 601, are salient to the issue at hand. These facts are as follows:

"The shooting occurred at 2:50 p. m., and shortly thereafter the Sheriff arrived at the scene. After a few minutes of investigation the Sheriff left to find appellant. Meanwhile appellant had voluntarily arrived at the Sheriff's courthouse office, but found no one present. Having heard over the Sheriff's two-way radio that the Sheriff was on his way to appellant's residence, and not being able to operate the same, appellant walked to the Tax Collector's office and asked a woman deputy there to contact the Sheriff and tell him that he (appellant) was not running. Appellant then returned alone to the Sheriff's office, sat down and began reading a newspaper. When the Sheriff arrived, between 3:15 p. m. and 3:30 p. m., the appellant arose and voluntarily stated, 'Well, I told them I was going to do it.' The Sheriff then pointed to the .30–30 rifle (later shown to be the weapon from which the fatal shots were fired) and appellant stated it belonged to him, but warned the Sheriff to be careful as the rifle was loaded. The record reflects that the Sheriff then told appellant he should not make any further statements as there were certain procedures to be followed before he could say anything. Shortly thereafter the appellant was taken before a magistrate.

"The Sheriff testified he had not arrested appellant prior to the complained of statements. From all the facts and circumstances in evidence, including the fact appellant was still in possession of his loaded rifle, we conclude that appellant was not under arrest when he made the inculpatory remarks described. The trial court did not err in admitting such statements."

We find that appellant's statement was voluntarily given to Captain Edge and was, therefore, admissible. No error is shown.

As stated in *Ancira v. State*, Tex.Cr.App., 516 S.W.2d 924, the factor in determining the voluntariness of a statement which has consistently impressed us is "whether or not the focus of the investigation has finally centered on the defendant." *Ancira*, p. 927. In this case, as in *Ancira*, the interrogating officer testified that the investigation had not yet narrowed to the appellant, but that "anybody could have done it," and that appellant and two others were suspects at the time the statement was made. This case is distinguishable from *Ancira* in that the officer's testimony is supported by other facts.

 Ancira spoke with the arresting officer at the officer's request. Here, as in *Brown v. State*, Tex.Cr.App., 475 S.W.2d 938, the defendant initiated the conversation which led to the statement. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." The fact that the accused and police officers are together in an office, or a home, or a police car will not render a statement inadmissible if the circumstances do not fall within the definition of custodial interrogation. The fact that appellant had been free to go and had chosen to return in order to speak with Captain Edge removes this case from the proscription of *Miranda*. Had police officers begun to focus their investiga-

tion on the appellant after he had inaugurated the conversation, we would be faced with different problems. Here, however, appellant made the statement after only one question which could hardly be described as directed toward eliciting an incriminating response. We find that appellant's statement was voluntarily given to Captain Edge and was, therefore, admissible. No error is shown.

In this third ground of error, appellant contends that the trial court erred in admitting photographs of the deceased taken at the time of the autopsy. The four photographs show the face of the deceased, the upper right side of the head, the right hand, and the left hand. Appellant argues that since the doctor who performed the autopsy testified that he had to dissect in order to evaluate a cerebral hemorrhage, the photographs are inadmissible because the jury could not determine if the wounds depicted were the result of the murder or the autopsy. Appellant relies on *Terry v. State*, Tex.Cr.App., 491 S.W.2d 161, where we held that four photographs of a child's body taken after an autopsy had been performed were inadmissible for the reason that they depicted "massive mutilation of the subject matter caused by the surgery in performing the autopsy," and in the absence of explanation, their probative value was outweighed by their inflammatory nature.

 Dr. Lynn, the doctor who performed the autopsy, testified that each of the photographs complained of depicted wounds incurred during the murder, probably by a heavy, blunt instrument. There was no testimony to the effect that any of the photographs pictured the deceased subsequent to the autopsy. *Terry* cannot be construed to prevent the admission of relevant photographs merely because the deceased has been removed to clinical surroundings. Cf. *Knoppa v. State*, Tex.Cr.App., 505 S.W.2d 802. Only where the results of surgery have obfuscated the results of the crime will otherwise accurate depictions be inadmissible. The photographs

here in question illustrated and clarified the doctor's description of the injuries, and no error is reflected in their admission. *Provost v. State*, Tex.Cr.App., 514 S.W.2d 269.

In his fourth ground of error, appellant contends that the trial court erred in permitting the prosecutor to argue about evidence which had been excluded.

Dr. Lynn testified that certain wounds on the hands and arms of the deceased were probably caused as she attempted to protect herself. Appellant's objection to this testimony, as being outside the pale of the doctor's expertise, was sustained. Appellant argues that the prosecutor, during his argument, referred to this testimony and thereby argued matters outside the record.

The record reveals the following:

"[Prosecutor]: Now then, you heard earlier the testimony regarding Dr. Lynn, what he said. Dr. Lynn got up here before you. They asked him about the hands, about the bruises on the hands. You will recall that he—they asked him, 'Well, how would that have been made.' He put his hands up here like this (Attorney indicating). Do you recall how—

"MR. COLVIN: I object to that, Your Honor. That was objected to and the objection was sustained. I ask that the prosecutor be instructed to not refer to matters that are not in evidence.

"THE COURT: Well, the Jury has heard the evidence. They are the ones to determine it."

■ It is not clear whether the court sustained or overruled appellant's objection. An objection must be pressed to an adverse conclusory ruling, or else it is waived. *Nichols v. State*, Tex.Cr.App., 504 S.W.2d 462; *Verret v. State*, Tex.Cr.App., 470 S.W.2d 883. Nothing is before us for review.

In his fifth ground of error, appellant contends the trial court erred in charging the jury as follows:

"Unless you find from the evidence beyond a reasonable doubt that the death of Imogene McNeill Apple was not caused by the independent act of a third party, if there was such a death, or if you have a reasonable doubt thereof, then you will acquit the defendant."

This paragraph of the charge was included to present the appellant's defense that an unknown third party committed the offense. Appellant argues that this paragraph is confusing and serves to shift the burden of proof to the defendant.

■ In considering a charge on appeal, we will not review isolated portions, but will consider the charge as a whole. *Peterson v. State*, Tex.Cr.App., 508 S.W.2d 844. In one of the final paragraphs of the charge in question, we find this instruction, "The burden of proof in all criminal cases rests upon the state throughout the trial; it never shifts to the defendant." Viewing the paragraph of which appellant complains in light of the foregoing instruction, it charges the jury that the state must convince them beyond a reasonable doubt that no one but the defendant took part in the murder; that is, the state must exclude all others save the defendant, otherwise an acquittal is required. The phrase "not caused by the independent act of a third party" can only mean "done by the appellant himself." This is the heart of the instruction under consideration. The charge is favorable to appellant in that the state must dispel all reasonable doubts that a third party committed the offense alone. Appellant's defense of an unknown third party murdering the deceased was adequately covered, and no error is shown.

In his sixth ground of error, appellant contends the trial court erred in submitting all six counts of the indictment to the jury, in that there was no evidence to support three of the counts. Appellant argues that there is no evidence that appellant caused "deceased to choke and strangle on blood and food particles and bodily fluids" by beating her with a pipe (counts three and four), or that appellant caused her death by beating deceased with his fist (count five).

■ Where a general verdict is returned, and the evidence is sufficient to support a finding under any of the counts submitted, no error is shown. *Hintz v. State*, Tex.Cr.App., 396 S.W.2d 411; *Cavazos v. State*, Tex.Cr.App., 365 S.W.2d 178.

■ Dr. Lynn testified that "the cause of death in this individual was apparent blunt trauma to the head with pontine venous hemorrhages, and aspiration of gastric contents." He further testified that the hemorrhage could have been caused "by either a blow by the fist or an instrument such as the pipe now in evidence." Appellant's sixth ground of error is overruled.

In his seventh ground of error, appellant contends the court erred in admitting inflammatory and bloody photographs of the deceased after the position of her body at the scene had been altered.

The photographs complained of were taken after the deceased had been rolled over and placed on a backboard and a towel or sheet had been placed over the lower portion of her body. Appellant argues that because the photographs do not depict the deceased as she was found they were offered by the state only to inflame the jury.

Robert Cabbell, a fireman and emergency medical technician with the Lewisville Fire Department, testified that he arrived on the scene and found the deceased lying face down in a pool of blood. Cabbell testified that there was blood "all over the floor and the walls and the cabinets." He further testified that he rolled her over to determine if she was alive or dead and that he and his assistant placed her on a backboard.

■ *Martin v. State*, Tex.Cr.App., 475 S.W.2d 265, does not limit the admission of gruesome photographs to those which depict a scene as found by that person unfortunate enough to discover it. The rule there announced is that if "a verbal description of the body and the scene would be admissible, a photograph depicting the same is admissible." It was not error to admit the photographs.

■ Lastly, appellant contends that the evidence is insufficient to sustain the conviction. The jury was instructed as to the law on circumstantial evidence. In view of the fact that appellant admitted hiding the implements of the crime, his contradictory statements to the police officers, and the circumstances which indicate a motive for the commission of the act, we find that the evidence is sufficient.

The judgment is affirmed.

Opinion approved by the Court.

ROBERTS, Judge (concurring).

I agree with the Court's disposition of appellant's fifth ground of error relating to the charge on independent acts of a third party. I find it necessary, however, to divorce myself from some of the language used by the Court in the treatment of the issue.

The charge complained of read as follows:

"Unless you find from the evidence beyond a reasonable doubt that the death of Imogene McNeill Apple was not caused by the independent act of a third party, if there was such a death, or if you have a reasonable doubt thereof, then you will acquit the defendant."

At best, the charge was confusing but it did not, as the appellant contends, shift the burden of proof to the defendant. Nor was the charge contradictory as in the case of *Black v. State*, 137 Tex.Cr.R. 516, 132 S.W.2d 267 (1939), relied upon by the appellant.

The charge given can be paraphrased as follows:

Unless you find beyond a reasonable doubt that the death was not caused by a third party, then you will acquit the defendant.

An analysis of the issues involved produces the following:

A. The State must prove that death was *not* caused by a third party.

B. The State must prove "A" beyond a reasonable doubt.

C. The charge should read: Unless you find "A and B," then you will acquit.

This charge resembles the charge actually given. It is an affirmative statement of the defensive issue. And it does not shift the State's burden of proof to the appellant.

I take issue, however, with the majority's reliance on another paragraph of the charge submitted by the court to the jury, "The burden of proof in all criminal cases rests upon the state throughout the trial; it never shifts to the defendant." It is one thing to "consider the charge as a whole" on review, but quite another thing to rely on a fortuitous catch-all phrase to cure otherwise reversible error. The majority would seemingly rely on this boiler plate paragraph to cure any and all defects shifting the burden of proof in other portions of the court's charge. This type of solution is subject to great potential for abuse and I cannot accede to such a practice.

MORRISON, J., joins in this concurrence.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

DOUGLAS, Judge.

Appellant urges that the trial court erred in admitting testimony that the deceased was planning to change her will. There is no proof that appellant knew that she had planned to change her will so that he would or would not be left property over the value of $400,000 as provided for in the will that had already been signed.

Assuming that it was error to admit the testimony, does its admission amount to reversible error? Let us look to some of the testimony already mentioned in the opinion on original submission and additional evidence that appears in the record. Even though the trial judge cautiously and wisely instructed the jury that this was a circumstantial evidence case, the evidence led to the conclusion that appellant and no other committed the murder. Appellant parked his car out by the fence in the back so that it would not be seen. He usually parked it where it could be seen.

From the testimony of Shirley Seiber and Freddy Wilson, the plumber, no one but appellant was in the house with the deceased at the time of the homicide. If anyone else had been in the house, they would have seen them. Appellant had blood on his chin, his face, hands and arm as well as on his clothing. He gave several contradictory versions to those who were at the house shortly after the homicide.

After these different versions, appellant then volunteered to Captain Edge " . . . I did not tell you the whole or exact truth about everything," and "I hid the murder weapon, a jacket, and the gloves." The officer found a metal pipe with blood and flesh on it and a coat with a pair of blood stained gloves in one pocket. The officers found a copy of a will executed by the deceased on top of a security box on a table. This was the only instrument outside the box.

Appellant had attempted to get the deceased to advance him some money for developing a club but she had refused. He knew the contents of the will in which he was the major beneficiary. On the day of, and just a short time before the murder, appellant in an attempt to obtain a loan for building a country club, listed twenty-two acres of land valued at $400,000 in the name of "Apple-Bailey." This showed he thought that he was about to own the land that day. Appellant had made statements that he could not live on the $2,000 a month that he was making as a pilot.

The proof in this case shows that appellant and no other killed the deceased. There is no indication that anyone else was suspected of committing the crime. Appellant was the only person in the house at the time of the homicide. His statement to the officer where he had hidden the murder weapon, gloves and jacket turned out to be true and is almost, if not, direct evidence of

his committing the crime. A motive to get the property because he could not live on his income and that he wanted the property and he wanted it immediately was proved.

 The error, if any, in admitting the complained of testimony is not sufficient to reverse this cause. Appellant's motion for rehearing is overruled.

## DISSENTING OPINION

## ON APPELLANT'S MOTION FOR REHEARING

ROBERTS, Judge.

### I.

The following is the opinion originally prepared and submitted to this Court on rehearing by the Honorable Carl E. F. Dally, Commissioner for the Court. I adopt it as Part I of my dissent to the majority's disposition of this case on rehearing.

"The appellant's motion for leave to file a motion for rehearing was granted. We now agree that appellant's first ground of error was improperly decided. The motion for rehearing will be granted.

"The appellant knew he was the principal beneficiary of the deceased's will. The appellant's counsel timely objected that until it was shown the appellant had knowledge that the deceased intended to change the provisions of her will, the court should not admit the testimony of deceased's attorney that she had an appointment to execute a new will on the afternoon of the day she was killed.

"Circumstances that show a defendant had a motive to kill the deceased are only admissible if it is first shown that the circumstances were probably known to the defendant. See McCormick and Ray, Evidence, Sec. 1534 (2d ed. 1956); Wigmore, Evidence, Sec. 389 at 329 (3d ed. 1940). If the circumstances are not known to a defendant, they could not stimulate the emotion causing the defendant to kill the deceased.

"The rule stated has been applied in many of the prior decisions in this State. Judgments have been reversed when circumstances were admitted to show a motive for murder but it was not shown that the defendant had knowledge of the circumstances. See e. g. *Phillips v. State*, [22 Tex.App. 139], 2 S.W. 601 (Tex.Ct.App. 1886); *De Leon v. State*, [68 Tex.Cr.R. 625], 155 S.W. 247 (Tex.Cr.App.1913); *Young v. State*, [59 Tex.Cr.R. 137], 127 S.W. 1058 (Tex.Cr.App.1910); *Black v. State*, [82 Tex. Cr.R. 358], 198 S.W. 959 (Tex.Cr.App.1917); *Kirklin v. State*, [73 Tex.Cr.R. 251], 164 S.W. 1016 (Tex.Cr.App.1914); *Terry v. State*, [45 Tex.Cr.R. 264], 76 S.W. 928 (Tex. Cr.App.1903); *Berwick v. State*, [116 Tex. Cr.R. 508], 31 S.W.2d 655 (Tex.Cr.App. 1930); *Edmondson v. State*, [109 Tex.Cr.R. 518], 6 S.W.2d 119 (Tex.Cr.App.1928).

"This rule has been recognized and found to be satisfied in many cases. See e. g. *Golin v. State*, [37 Tex.Cr.R. 90], 38 S.W. 794 (Tex.Cr.App.1897); *Barkman v. State*, [41 Tex.Cr.R. 105], 52 S.W. 73 (Tex.Cr.App. 1899); *Smith v. State*, [44 Tex.Cr.R. 53], 68 S.W. 267 (Tex.Cr.App.1902); *Harrelson v. State*, [60 Tex.Cr.R. 534], 132 S.W. 783 (Tex. Cr.App.1910); *Martin v. State*, [91 Tex. Cr.R. 23], 236 S.W. 729 (Tex.Cr.App.1922); *Arriola v. State*, [108 Tex.Cr.R. 270], 1 S.W.2d 287 (Tex.Cr.App.1927); *Davis v. State*, [118 Tex.Cr.R. 410], 40 S.W.2d 809 (Tex.Cr.App.1931); *Morgan v. State*, [121 Tex.Cr.R. 424], 49 S.W.2d 788 (Tex.Cr.App. 1932); *Brown v. State*, [172 Tex.Cr.R. 229], 355 S.W.2d 718 (Tex.Cr.App.1962). Among the cases from other jurisdictions recognizing the rule here applied are *People v. Gaugas [Gougas]*, [410 Ill. 235], 102 N.E.2d 152 (Ill.Sup.Ct.1951); *Spradlin v. State*, [88 Ga.App. 230], 76 S.E.2d 435 (Ga.App.1953).

"The State does not argue that there is evidence to show the appellant had knowledge the deceased intended to change her will. The State merely argues that greater latitude in admitting evidence is permissible since this is a case based wholly on circumstantial evidence. For this general rule

they cite and rely only upon *Knapp v. State*, 504 S.W.2d 421 (Tex.Cr.App.1973) and *Ethridge v. State*, [133 Tex.Cr.R. 287], 110 S.W.2d 756 (Tex.Cr.App.1937). This general rule contained in these authorities is not contrary to our holding in this case.

"The rule applied in this case governing the admission of circumstances to show motive in a murder case is equally applicable to direct and circumstantial evidence cases. See *Phillips v. State*, supra. The appellant's motion for rehearing is granted."

## II.

This case should be reversed for another reason. On original submission I concurred in the affirmance of appellant's conviction despite my reservations about the court's instruction on the independent acts of a third party. After careful reconsideration, I have concluded that the trial court reversibly erred in this portion of the charge because it failed to submit this defensive issue as an *affirmative* instruction. As this Court said in *Barton v. State*, 172 Tex.Cr.R. 600, 601–602, 361 S.W.2d 716, 717 (1962):

"It is well settled that an accused is entitled to an affirmative instruction on the law as to every defensive issue raised by the evidence, even though such issue be raised by his testimony alone."

And in *Carter v. State*, 515 S.W.2d 668, 669 (Tex.Cr.App.1974), we held:

"When a defensive theory is raised by evidence coming from any source, and a charge thereon is properly requested, it must be submitted to the jury. See *Gavia v. State*, 488 S.W.2d 420 (Tex.Cr.App. 1972)."

This is true regardless of "whether [the evidence is] produced by the State or the defendant, and whether it be strong, weak, unimpeached, or contradicted." *Thompson v. State*, 521 S.W.2d 621, 624 (Tex.Cr.App. 1974).

An affirmative charge is one which states in clear and positive terms the issues the jury is called upon to determine. *Reynolds v. State*, 8 Tex.App. 412 (Austin Term, 1880). It "should be so framed as not to give undue prominence to any fact, theory, or proposition of law," *Moore v. State*, 59 Tex.Cr.R. 361, 364, 128 S.W. 1115, 1116 (1910); moreover, it should be "disconnected from the theory of the state." *Moore*, supra. In short, it must not "unduly emphasize the theory of the prosecution, thereby deemphasizing proportionally the defendant's theory." *Perez v. United States*, 297 F.2d 12, 16 (5th Cir. 1961).

The rationale for the rule is best stated in the early case of *Reynolds v. State*, supra, a burglary prosecution where the defendant attempted to show that one Griffin had probably committed the offense:[1]

"Repeated decisions of courts of last resort in this State, as well as the provisions of our statute, have established the principle that upon the trial of a felony case it is incumbent upon the court to instruct the jury as to the law, and all the law, applicable to the case, and to every issue legitimately deducible from the evidence. It is the fundamental policy of the law that in trials for the graver offences, [sic] which may result in the deprivation of life or liberty, the jury shall have presented to them in plain language the law governing the exact issues they are called upon to determine, so framed that their minds can readily comprehend and solve the question of guilt or innocence by an easy and simple application of the law to the facts they find to be true.

"A charge which submits some of these issues, especially such as are based upon evidence tending to establish the innocence of the person on trial, in an inferential or negative way, does not meet this

1. Griffin was, providentially, absent from the trial court's jurisdiction at the time of trial. The Court of Appeals summarized Reynolds' defense with the following language: "In short, the defence [sic] saddled the *onus* on Griffin, who, all things considered, was in good plight to carry it." *Reynolds*, supra, 8 Tex.App. at 414.

legal requirement. *The defendant is entitled to a distinct and affirmative presentation of the issues arising upon his evidence, in order that the jury may not be induced to ignore his defences [sic] upon the supposition that the court did not deem them of sufficient importance to justify consideration*, and for a further reason that without such presentation the jury are in no condition to make an intelligent selection of the law which should govern them in case they should find that the defendant's evidence was true. *Heath v. The State*, 7 Texas Ct.App. 464; *Smith v. The State*, 7 Texas Ct.App. 414; *Beckham v. The State*, [8 Tex.Ct.App.] 52.

"It may often happen that the testimony in defence [sic] has been fabricated, and that so inartistically as to bear upon its face an air of improbability or actual untruth; but even then the court is not relieved from the duty of considering it in framing his charge, as it is the right of the defendant to have its truth or falsity determined by the jury and not by the court in the first instance. As said by this court in the recent case of *Riojas v. The State*, [8 Tex.Ct.App.] 49, [50,] in discussing this identical question: 'In view of all the evidence elicited on the trial, it is more than probable that this defence, [sic] even under a proper instruction, would have had no appreciable effect with the jury, and would have been discarded altogether by them in reaching their conclusion. But that was not a question for the determination of the court below, and cannot be with this court on appeal. The provinces of court and jury are plainly and rigidly defined by law, and it is not for the former to act upon a belief that the latter cannot be affected by any particular portion of the evidence. Possibly they (the jury) may entertain an altogether different view of the evidence, as is their undoubted prerogative under the law.' " *Reynolds v. State*, supra, at 414–415. (Emphasis added.)

The emphasized language makes it evident that the major reason for the rule is that a charge which fails to instruct affirmatively on the evidence favorable to the defendant constitutes a comment on the weight of the evidence in violation of what is now Art. 36.14, Vernon's Ann.C.C.P. Compare Art. 38.05, V.A.C.C.P. *Accord*: *McLaughlin v. State*, 10 Tex.App. 340, 357–358 (Austin Term 1881).

What remains is the question of what form an affirmative charge should take. The recent case of *Cozby v. State*, 506 S.W.2d 589 (Tex.Cr.App.1974), is helpful. In *Cozby*, this Court reversed the conviction because of the trial court's failure to give an affirmative charge on the issue of "good faith" purchase. There the court approved as an "affirmative charge" a requested charge which used the following language:

"You are further instructed that *if you believe from the evidence that the Defendant*, Charles Cozby, purchased the red '71 Ford LTD, in good faith, alleged to have been stolen from Ted Arendale Ford, if you have so found, from the said Ray Woods and paid valuable consideration for the purchase of said automobile, *then you will say by your verdict 'Not Guilty'; or if you have a reasonable doubt thereof, you will acquit the Defendant.*" (Emphasis added.)

The charge which was given in *Cozby* —but deemed inadequate by this Court— was as follows:

"Even though you should find and believe from the evidence beyond a reasonable doubt that the Defendant received from person or persons unknown property described in the indictment of the value of over Fifty Dollars, yet *you cannot convict the Defendant unless you further find and believe from the evidence, beyond a reasonable doubt*, that, at the time he so received said property, if he did, the Defendant received the same fraudulently, with the intent to appropriate said property to his own use and benefit and to deprive the owner of the value thereof, and that the Defendant then knew that

the same had theretofore been stolen, *and if you have a reasonable doubt as to whether the Defendant received such property fraudulently, or as to whether the Defendant knew at the time he received the same, if he did, that such property had theretofore been stolen, then you will acquit the Defendant.*" (Emphasis added.)

The requested charge in *Cozby* follows the guidelines outlined above; that is, it states the defensive theory affirmatively, using direct language: "If you believe . . . you will acquit the Defendant." Similarly, the charge *given* in *Cozby* presents the defensive theory in negative terms which unduly emphasize the State's theory of the case: " . . . you *cannot* convict the Defendant *unless* you find and believe . . . "

In this case the State's evidence raised the issue of whether the homicide was committed by the acts of a person other than the appellant. Accordingly, the appellant made a timely objection to the court's charge for its failure "to instruct for acquittal if the jury finds that the death of the deceased was caused by the independent act of a third person."

The trial court responded to this objection by giving the confusing and seemingly contradictory charge which is reproduced in the concurring opinion on original submission. The appellant then objected to the form of this charge.

The charge given in this case strongly resembles the charge in *Cozby*, not only in its negative emphasis, but in its capacity for creating confusion in the minds of the jurors and implying to them that the trial judge favored the State's view of the case. *Reynolds v. State*, supra; *McLaughlin v. State*, supra. Similarly, the charge requested here by the appellant is in the form endorsed by the Court in *Cozby*. It should have been given; the failure to do so was reversible error. See *Burkhalter v. State*, 79 Tex.Cr.R. 336, 184 S.W. 221 (1916), and *Ward v. State*, 71 Tex.Cr.R. 310, 158 S.W.

1126 (1913), for examples of the charge as it should have been given.

The judgment should be reversed.

ODOM, J., joins in Part I of this dissent.